CHARLES H. RHOADES *vs.* JOHN R. BLACKISTON & others.

The plaintiff, a coal merchant, transferred his business to J. S., as security for a debt, under an agreement that J. S. should furnish the capital and receive all the profits, except enough to support the plaintiff and his family, until the debt should be paid, and that after the debt was paid the property and profits should belong to the plaintiff; subsequently the plaintiff made a contract with the defendants in his own name, but as agent of J. S., for the purchase of coal; the defendants broke the contract; and afterwards the plaintiff became bankrupt, the debt to J. S. remaining unpaid. *Held,* that the right to sue for breach of the contract did not pass to the plaintiff's assignees in bankruptcy, and that he could sue thereon in his own name.

CONTRACT for breach of an agreement to sell and deliver coal. At the trial in this court, before *Colt,* J., the plaintiff testified that after the making of the alleged agreement, and its breach by the defendants, he was adjudged a bankrupt; " that he made the agreement while acting as agent of Alonzo V. Lynde, under authority from him, and made it as agent; that he owed Lynde a

large sum of money, and had transferred his coal business to him as security for the debt; that it was agreed between them, that Lynde was to furnish the capital, and was to receive all the profits of the business, except enough to support the plaintiff and his family, until the debt should be paid; that after the debt was paid the property was to be his, and the profits of the business; and that he had no property in the coal, or interest other than as stated, and his own money was not invested in the business; but that he was to have his living out of the business until the debt was paid."

The defendants objected that the plaintiff could not maintain the action, and the judge reported the case for the determination of the full court, if the court should be of opinion that the plaintiff could not maintain the action, judgment to be for the defendants, otherwise the case to stand for trial.

*T. H. Sweetser & C. Abbott*, for the plaintiff.

*W. A. Field*, for the defendants, cited U. S. St. of 1867, *c.* 176, § 14; *Tamplin* v. *Wentworth*, 99 Mass. 63; *Wright* v. *Fairfield*, 2 B. & Ad. 727; *Ferguson* v. *Spencer*, 1 Man. & Gr. 987; *D'Arnay* v. *Chesneau*, 13 M. & W. 796, 809; *Parnham* v. *Hurst*, 8 M. & W. 743; *Castelli* v. *Boddington*, 1 El. & Bl. 66. 879; *Beckham* v. *Drake*, 2 H. L. Cas. 579, 632; *Ontario Bank* v. *Mumford*, 2 Barb. Ch. 596.

COLT, J. It is a well established rule of law, that when a contract, not under seal, is made with an agent in his own name for an undisclosed principal, either the agent or the principal may sue upon it. If the agent sues, it is no ground of defence that the beneficial interest is in another, or that the plaintiff, when he recovers, will be bound to account to another. There is an additional reason for giving this right to the agent, when he has a special interest in the subject matter, or a lien upon it. But the rule prevails when the sole interest under the contract is in the principal. The agent's right is of course subordinate to and liable to the control of the principal, to the extent of his interest. He may supersede it by suing in his own name, or otherwise suspend or extinguish it, subject only to the special right or lien which the agent may have acquired. *Colburn* v. *Phillips*, 13

Gray, 64. *Fairfield* v. *Adams*, 16 Pick. 383. Story on Agency, § 403.

In this case, the contract relied on was made by the plaintiff in his own name, as agent for an undisclosed principal, who does not now in any way interpose. But admitting the law of principal and agent as that stated, the defendants further contend that the plaintiff's right of action passed to his assignees in bankruptcy, who were appointed in proceedings commenced after the alleged breach. It appears that the plaintiff made the contract in the course of a business which he was carrying on for Alonzo V. Lynde, and which he had previously transferred to Lynde as security for a debt, with the agreement that after the debt was paid the property was to be his with the profits of the business, Lynde furnishing all the capital and receiving all the profits, except enough for the support of the plaintiff and his family, until the debt should be paid. And it is claimed that upon these facts the plaintiff had such a legal and equitable interest in the contract that it must pass by the bankruptcy proceedings to the assignees.

Assignees in bankruptcy do not, like heirs and executors, take the whole legal title in the bankrupt's property. They take such estate only as the bankrupt had a beneficial as well as legal interest in, and which is to be applied for the payment of his debts. To a plea that the plaintiff is a bankrupt, and that all his estate vested in his assignees, it is a good replication that the whole beneficial interest in the contract or demand in suit was vested by prior assignment in a third party, for whose benefit the suit is prosecuted. If however the bankrupt has any beneficial interest in the avails of the suit, then the whole legal title vests in his assignee, and the action must be in his name, for there cannot be two legal owners of one contract at the same time. *Webster* v. *Scales*, 4 Dougl. 7. *Winch* v. *Keeley*, 1 T. R. 619. *Carpenter* v. *Marnell*, 3 B. & P. 40.

In most of the English cases in which these rules have been applied, there was an assignment of a chose in action by the bankrupt to a third party, made before the bankruptcy, and they have mainly turned on the question whether the transfer was absolute or only as security for debt, and if as security only, then

Rhoades *v.* Blackiston.

further, on the question whether the security was of greater value than the debt secured, at the time of the bankruptcy. The case of *D'Arnay* v. *Chesneau*, 13 M. & W. 796, 809, relied on at the argument, was of this description, and Baron Parke there declared " that if the debt to be secured was less than the debt assigned, and there was nothing more than a simple assignmen of the debt as a security, the right of action would vest ·in the insolvent's assignees. In such a case they would have an immediate interest in the sum to be recovered, from which benefit to the creditors might result, and they would not have been bound to refund all they had recovered to the equitable assignee of the debt, (their *cestui que trust*,) which is the proper criterion." *Dangerfield* v. *Thomas*, 9 Ad. & El. 292.

The court are of opinion that the rule in these cases, if ever applicable to a case where an agent sues upon a contract, made in the course of his agency, where the suit is subject to the control of the principal, cannot be applied to defeat the plaintiff's·action here. The pledged property consisted of a business to be carried on with the capital of the party to whom it was transferred. The contracts made in the course of it were the contracts of the principal. The agent had no immediate beneficial interest in them. His interest was only in the future profits, and that contingent on their being sufficient to pay the debt he owed. The contract of Lynde to restore the property to the plaintiff was executory, and there was no claim that the contingency had happened upon which the business and property were to become the plaintiff's. The inference from the facts reported is, that it did not. The support which he was to have for himself and his family was plainly in compensation for his agency in the business. And there is nothing to show that the creditors in bankruptcy have any valuable interest in the contract declared on. *Parnham* v. *Hurst*, 8 M. & W, 743. *Ontario Bank* v. *Mumford*, 2 Barb. Ch. 596. 3 Parsons on Contracts, 479.

*Case to stand for trial.*