**Richmond.**

THE NATIONAL BANK OF VA. *v.* NOLTING.

January 28, 1897.

1. PRINCIPAL AND AGENT— *Contract with agent— Who may sue—Declaration— Amendment by endorsing name of beneficial plaintiff.*—Where a contract not under seal is made with an agent and in the agent's name, for an undisclosed principal, either principal or agent may sue on it. And, on proof that the agent has no beneficial interest in the subject, it is not error to permit the declaration to be so amended as to show that the action is for the benefit of his principal, and to allow the action to proceed to judgment in that form.

2. BANKS—*Raised check—Liability of bank—Duty of depositor in drawing check.*—A bank is responsible to a depositor for the payment of a check which has been altered in a material particular after signature, unless the negligence or laches of the drawer has laid the foundation for the error of the bank. The depositor, however, is only chargeable with the duty of ordinary care and diligence. Merely giving a stranger a check in exchange for money is not such negligence on the part of the drawer as will excuse the bank on which it is drawn for paying the check after it has been raised to a larger amount by the drawee without authority.

Error to a judgment of the Circuit Court of the city of Richmond, rendered February 27, 1895, in an action of *assumpsit* wherein "W. O. Nolting, styling himself W. O. Nolting, Cashier," was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The declaration contained counts for goods sold and delivered, for work and labor performed, and the usual ' 'money-counts.'' There was no special count setting out the real transaction between the parties. There was a demurrer to

the declaration, and to each count thereof, but this was over-ruled, and the defendant pleaded *non-assumpsit.*

On the trial, after the witness, W. O. Nolting, had testi-fied that he was the cashier and clerk of Davis & Gregory Company, and that Davis & Gregory Company were the real plaintiffs and entitled to the recovery sought to be obtained in this action, and not the witness, the defendant moved the court to dismiss said case because it had been brought in the name of the wrong plaintiff, and thereupon Davis & Gregory Company moved the court to allow the declaration to be amended, and the suit to be prosecuted in the name of W. O. Nolting, Cashier, etc., for the benefit of Davis & Gregory Co., which amendment the court allowed, and overruled the motion of the defendant to dismiss said cause, to which ruling of the court the defendant excepted.

This constitutes the first exception of the plaintiff in error. There was a verdict and judgment against the plaintiff in error, which it moved to set aside because contrary to the law and the evidence. This motion was overruled, and the plain-tiff in error again excepted.

*Christian & Christian,* for the plaintiff in error.

*Pollard & Sands* and *W. H. Sands,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

There is no objection to the form of this action, and the demurrer was properly overruled.

The plaintiff, in keeping the account with the defendant, and in bringing suit to recover the alleged balance was acting as agent, and it is well settled that where a contract not under seal is made with an agent, and in the agent's name for an undisclosed principal, either the agent or principal may sue upon it. 3 Rob. Prac. (new) 34; *Rhoades* v. *Blackstone,* 106 Mass. 334.

Though the record states that the facts are certified, it appears that the evidence of each witness is certified, showing fully the conflict in the testimony.    This being so, the plaintiff in error is in the position of demurring to the evidence. *Read's Case*, 22 Gratt. 924.

There was no exception to the instructions given, and taken together they correctly state the law applicable to the case.

The assignment of error chiefly relied on is the refusal of the court to set aside the verdict as contrary to the law and the evidence.

It appears that a stranger, with whom the defendant in error sustained no business relation, and was under no obligation to accommodate, presented himself at the place of business of Davis & Gregory Co., and secured from the cashier of that firm, the defendant in error here, a check on the National Bank of Virginia for ten dollars, in exchange for ten dollars in currency; that when this check was presented and paid it had been raised to five hundred dollars.    Must this loss fall upon the bank or upon the customer?

In their relations with depositors, banks are held to a rigid responsibility.    They undertake the care and custody of the customer's money for the benefit derived from its use while in their hands, and they are bound to pay from time to time such sums as may be ordered.    If, however, the banker unfortunately pays money belonging to the customer upon an order which is not genuine, he must suffer, and to justify the payment, he must show that the order is genuine, not in signature only, but in every respect.    *Hall* v. *Fuller*, 5 Barnwell & Creswell 750.

The law governing in cases like this has been well stated as follows: "The rule requiring the bank to know the customer's hand writing was always confined to having a knowledge of his signature.    Neither any rule of law, nor the ordinary course of business, renders it a matter of suspicion that the body of the check or bill is not written in the hand writ-

ing of the maker or drawer.   Nevertheless, a false or fraudu-
lent alteration in a material particular, made in the body of
the check or bill, after signature, constitutes a forged instru-
ment just as much as the simulating the signature itself.   By
such alteration the instrument is vitiated, even in the hands
of a *bona fide* holder for value, although it might not be
possible to discover the change even by a careful scrutiny.
Of course it follows, as between the bank and the depositor,
that a payment by the bank is the loss of the bank; and such
is the unquestionable rule, except in those instances wherein
the negligence or laches of the drawer of the check has laid
the foundation for the error of the bank.   If by any negli-
gence upon his part, as by so carelessly writing the check as
to render it easily open to material alteration without leaving
evident traces for detection, the customer has furnished the
opportunity for the fraud which has deceived the bank, then
he must suffer the just consequences of his carelessness by
bearing the loss himself.''   Morse on Banks and Banking,
sec. 480.

The depositor is only charged with the duty of ordinary
diligence and care.   The character of negligence that would
impose the loss upon the customer is illustrated by the old
case of *Young* v. *Grote*, 4 Bing. 253, where the depositor,
going away from home, left with his wife several checks
which he had signed in blank, and which she was to fill up
according to her needs.   She filled up one for fifty-two
pounds, two shillings; but she began the word fifty with a
small letter, and in the middle of a blank line.   In writing
the marginal figures, likewise, she left a considerable space
between the ''pound mark'' and the figures 52.   She gave
the check in this form to her husband's clerk to get the money
upon it.   He inserted the words ''three hundred'' before the
word ''fifty,'' and the figure 3 before the figures 52, and
then presented it, and drew 352 pounds upon it.   Here the
check had been so carelessly written that the forgery was

made the simplest matter in the world, and the court held that the loss must rest with the drawer.

In the case at bar, it is not pretended that there was any negligence in drawing the check. It is, however, insisted that it was negligence in the drawer to deliver his check to a stranger, to whom he was under no manner of obligation; that this act furnished the opportunity and facilitated the forgery; and that, consequently, the drawer must bear the loss. This position is not tenable. Such negligence does not belong to the species that would impose the loss upon the drawer of the check. To make the drawer liable the negligence must be immediately connected with the forgery. The negligence here complained of is too remote. This view was taken by the House of Lords in a case where it was held that leaving the seal of a corporation exposed so as to be accessible to a forger was not sufficient evidence of negligence to discharge a bank where it had transferred stocks under a forged power of attorney to which the seal was affixed. It was said that the negligence was too remote to affect the case. *Bank of I.* v. *Evans*, 5 H. L. cases 409.

Drawing the check in favor of the stranger was not the proximate cause of the loss. The forgery was the immediate cause, and that could have been as readily perpetrated by an acquaintance. To hold that giving a check to a stranger, where no business relation existed between the drawer and himself, was sufficient evidence of negligence to excuse the bank and impose the loss upon the drawer, if the check was forged by raising it to a larger amount than it was given for, would be to release the banks from the just responsibility imposed upon them by the law as custodians of the customer's money, and expose the depositor to a risk and danger that would greatly impair the usefulness of the bank as a safe place of deposit.

The judgment of the court below is in conformity with these views, and must be affirmed.

*Affirmed.*