# Richmond.

## Thomas Branch & Company v. Riverside and Dan River Cotton Mills, Inc.

### March 17, 1927.

1. Appeal and Error—*Second Appeal—Law of the Case.*—On a second appeal the decision on the first appeal is the law of the case upon every question involved in that case and decided therein.

2. Appeal and Error—*Remand of Equity Cause with Leave to Amend Under Section 6084 of the Code of 1919 as may be Necessary to Conform to the Practice on the Law Side of the Court—Amendments Questioned on Second Appeal—Case at Bar.*—The instant case was brought on the law side of the court after a suit in equity between the same parties had been remanded with leave to the complainants, plaintiffs in the instant case, to amend their pleadings under Code of 1919, section 6084, to conform the case to the proper practice on the law side of the court. Therefore, in the instant case, the amendments so far as were necessary to conform the case to the proper practice on the law side of the court were made under express authority and by leave of the Supreme Court of Appeals, and such amendments could not be questioned in the instant case upon appeal.

3. Appeal and Error—*Second Appeal—Law of the Case—Reversal and Remand with Leave to Amend to Conform to the Practice of the Law Side of the Court.*—Where the Supreme Court of Appeals reversed a decree for defendant in an equity suit and remanded the case with leave to complainants to amend their pleadings to conform to the proper practice on the law side of the court, under Code of 1919, section 6084, every holding of the Supreme Court of Appeals upon the original appeal (whether express or necessarily implied), which was a necessary premise upon which the final finding, to wit, that complainants were entitled to have the cause reversed and remanded with leave to amend so as to conform with the practice on the law side of the court, is the law of the case on a second appeal.

4. Limitation of Actions—*Remand of Equity Cause with Leave to Amend to Conform to the Practice on the Law Side of the Court—Amendments Relate Back to a Filing of the Original Bill.*—Where, on appeal from a decree in equity in favor of defendant, the cause was reversed and remanded with leave to complainants to amend their pleadings to

conform with the practice on the law side of the court, unless the amendments made out a new case, the statute of limitations has no application to the situation, as the amendments relate back to the date of the filing of the original bill in equity, and the amended declaration is but a continuation of the original proceedings.

5. APPEAL AND ERROR—*Reversal and Remand—Reversal Upon One Ground of Demurrer—Effect—Other Grounds of Demurrer—Case at Bar.*—In the instant case plaintiffs had brought a suit in equity against defendant, a corporation, for specific performance of a contract to permit preferred stockholders to subscribe to an issue of additional stock of the corporation along with the common stockholders. A demurrer by defendant was sustained on the ground that a court of equity could not grant the relief prayed for because the sale of the common stock to the common stockholders had taken place before the bill was filed. The Supreme Court of Appeals sustained the demurrer on this ground but reversed the decree; dismissing complainants' bill and remanded the case to the circuit court with leave to the complainants to amend their pleadings under section 6084 of the Code of 1919.

   *Held:* That the holding of the Supreme Court of Appeals was necessarily not only a holding that there was no merit in the other grounds of demurrer, but it was necessarily, also, a holding that complainants had stated a case that entitled them to relief but for the fact they filed their bill too late.

6. APPEAL AND ERROR—*Remand of Equity Cause with Leave to Amend to Conform to the Practice of the Law Side of the Court—Implication that Party has a Remedy at Law.*—Where, on an appeal from a decree for defendant in an equity case, the Supreme Court of Appeals reversed the decree and remanded the case with leave to complainants to amend their pleadings to conform with the proper practice of the law side of the court, it necessarily follows that complainants still had a remedy at law, probably inadequate, but a remedy, nevertheless, else it would have been a futile thing to remand the cause and to have given them leave to remove the cause to the law side of the court and to amend to conform to the practice on that side; and if they sustained the allegations of their original bill, as amended to *conform* to the proper practice, by proof, they were entitled to a verdict and judgment.

7. LIMITATION OF ACTIONS—*Remand of Equity Case with Leave to Amend to Conform to the Practice of the Law Side of the Court—New Case.*—Where, on appeal from a decree for defendant in an equity case, the Supreme Court of Appeals reversed the decree and remanded the cause with leave to complainants to amend to conform with the practice on the law side of the court, it is obvious that if complainants did not amend their pleadings so as to make out a new case the

statute of limitations did not apply to the action brought on the law side of the court, as the amendments relate back to the date of filing the original bill.

8. Limitation of Actions—*Remand of Equity Cause with Leave to Amend to Conform to the Practice on the Law Side of the Court—Co-plaintiffs Dropped when Action Brought on the Law Side of the Court—New Cause of Action.*—In the instant case, the Supreme Court of Appeals had reversed a decree for defendant in a suit between the same parties and remanded the case with leave to complainants to amend their pleadings to conform with the practice on the law side of the court. Six of the complainants associated with plaintiffs in the bill of complaint were dropped in the amended declaration on the law side of the court, and plaintiffs proceeded alone against defendant. This was but conforming the pleadings to the practice in a court of law, since several plaintiffs, although they may have a common cause of action, cannot join in an action against a common defendant.

   *Held:* That the amended declaration did not state a new cause of action barred by the statute of limitations.

9. Limitations of Actions—*Remand of Equity Cause with Leave to Amend to Conform to the Practice on the Law Side of the Court—Amended Declaration Demanding Damages—New Cause of Action.*—In the instant case the Supreme Court of Appeals had reversed a decree for defendant in a suit between the same parties and remanded the case with leave to complainants to amend their pleadings to conform with the practice on the law side of the court. The amended declaration demanded damages for a breach of contract, whereas the original bill prayed for specific performance of the contract.

   *Held:* That the amended declaration did not on this account state a new cause of action. The order remanding the cause and permittting its transfer to the law side of the court and amendment necessarily implied that the action should sound in damages for breach of the contract, which the Supreme Court of Appeals found, because of the circumstances of the case, could not be specifically enforced.

10. Limitation of Actions—*Remand of Equity Cause with Leave to Amend to Conform to the Practice on the Law Side of the Court—Correction to Conform to Facts—New Cause of Action.*—The Supreme Court of Appeals reversed a decree for the defendant in a suit for specific performance by preferred stockholders against the corporation for new stock issued, and remanded the cause with leave to amend to conform to the practice on the law side of the court. The original bill claimed delivery to the extent of fifty per cent of the holdings of the preferred stockholders, whereas the amended pleadings claimed damages only as to twenty per cent of these holdings.

   *Held:* That there was nothing in this that made the amended plead-

ings a new cause of action. It was only a correction to conform to facts which had been pointed out in the opinion upon the appeal.

11. . LIMITATIONS OF ACTIONS—*Remand of Equity Cause with Leave to Amend to Conform to the Practice on the Law Side of the Court—Allegation of Value—New Cause of Action.*—The Supreme Court of Appeals reversed a decree for the defendant in a suit for specific performance by preferred stockholders against the corporation for new stock issued, and remanded the cause with leave to amend to conform to the practice on the law side of the court. In the original bill there was no allegation as to the value of the common stock, whereas the declaration on the law side of the court alleged that it was of a much greater value than $100 per share.

*Held:* That this was a change made to conform to the practice in the law court and was not such a change as constituted a new cause of action.

12. APPEAL AND ERROR—*Remand with Leave to Conform to the Practice on the Law Side of the Court—Amendments—Case at Bar.*—In the instant case the Supreme Court of Appeals reversed a chancery case and remanded it with leave to the plaintiffs to amend to conform to the practice on the law side of the court. It was objected by defendant that the amended declaration was based on a cause of action arising on October 1, 1920, and the chancery suit was filed in September 1920, which was before the cause of action mentioned in the amendments arose. The date (October 1, 1920) was changed by amendment, made by leave of the trial court, to February 15, 1919, to conform to facts.

*Held:* That as finally amended there was no inconsistency in the pleadings.

13. LIMITATION OF ACTIONS—*Appeal and Error—Remand of Equity Cause with Leave to Plaintiffs to Amend to Conform to the Practice on the Law Side of the Court—New Cause of Action—Case at Bar.*—In the instant case the Supreme Court of Appeals reversed the decree for defendant in a chancery cause and remanded the cause with leave to plaintiffs to amend to conform to the practice on the law side of the court. With the exception of changes made necessary by transfer of the cause from the chancery to the law side of the court, and which must have been in the contemplation of the Supreme Court of Appeals when leave was granted to transfer and amend, and one or two immaterial changes which could by no possibility make the amended pleadings a new cause of action, the amended declaration, of which the original bill was made a part by reference, stated a cause of action identical with that set out in the bill. The trial court set aside the verdict for plaintiffs on a ground that the amended declaration set forth a new cause of action and that a plea of the statute of limitations interposed by defendant was good.

*Held:* Error, as the plea of limitations should have been rejected.

14. Parties—*Agency—Agents of Stockholders Suing Corporation for Breach of Contract—Case at Bar.*—In the instant case, an action against a corporation by preferred stockholders for a breach of contract in refusing to permit the preferred stockholders to subscribe to additional stock of the corporation along with common stockholders, it was not error to permit the action to proceed in the same name of the plaintiffs in whose name the stock was carried on the books of the corporation and had always been held and managed by them, although it was shown in evidence that they did not own the stock but were the agents of the owners.

15. Agency—*Parties—Undisclosed Principal—Action in Agent's Own Name.*—Where a person enters into a simple contract, oral or in writing, other than a negotiable instrument, in his own name, when he is in fact acting as the agent of another and for his benefit, without disclosing his principal, the other party to the contract may, as a general rule, hold either the agent or his principal, when discovered, personally liable on the contract. But he cannot hold both. It is also settled that upon such a contract either the agent or principal may sue.

16. Agency—*Parties—Undisclosed Principal—Action in Agent's Own Name—Misjoinder—Case at Bar.*—In an action by the agents of preferred stockholders against a corporation for a breach of a contract to allow the preferred stockholders to participate in the issuance of new stock, the agents, having the right in the first instance to maintain the action for their principal, cannot be required to substitute the real owners as plaintiffs, so that after such substitution a motion could be made by defendant on the ground that the parties were misjoined, because four stockholders owning one-fourth each of 671 shares could not join in one action at law against the defendant.

17. Agency—*Parties—Agent for Several Principals.*—One agent, who has made a single contract for several principals, may maintain a single action against a defendant for breach of it.

18. Appeal and Error—*Second Appeal—Law of the Case—Instructions.*—Where a decree for defendant in an equity cause was reversed and remanded with leave to complainants to amend their pleadings to conform to the practice on the law side of the court, instructions offered in the action, brought in conformity with the remand, which were in the teeth of the decision of the Supreme Court of Appeals reversing the decision in the original suit and remanding the cause to the law side of the court, were properly refused.

19. Verdict—*Damages—Interest—Section 6259 of the Code of 1919.*—In an action for damages for breach of a contract against a corporation by its preferred stockholders for failure to issue to the preferred stockholders, along with the common stockholders, their share of additional stock, an instruction which told the jury to allow interest from a certain date was erroneous, as the allowance of interest, under section 6259 of the Code of 1919, should have been left to the jury.

Error to a judgment of the Circuit Court of Pittsylvania county, in an action of assumpsit. Judgment for defendant.   Plaintiffs assign error.

*Reversed.*

The opinion states the case.

*Legh R. Page* and *John S. Eggleston,* for the plaintiffs in error.

*Malcolm K. Harris,* for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

This case is the sequel to the case of *Branch & Co.* v. *Riverside and Dan River Cotton Mills, Inc.*, reported in 139 Va. at page 291, 123 S. E. 542.   The early history of the case is fully set out in the opinion as reported in that case and it will not be repeated in detail here.

Thomas Branch & Company will hereafter be referred to as Branch & Company, and the Riverside and Dan River Cotton Mills will be referred to as the mills.

Branch & Company were, prior to January 1, 1920, and are now the owners, so far as the books of the mills show, of 671 shares of its preferred stock.

On July 28, 1920, Branch & Company together with several other holders of preferred stock, filed their bill in chancery in which they alleged that they were the owners of the stock referred to; that there was at that time authorized 60,000 shares of the common stock and 60,000 shares of the preferred stock, that 40,000 shares of the common stock and all of the authorized shares of the preferred stock were issued and outstanding; further, that upon learning that it was proposed to issue 20,000

shares of the common stock, then authorized but unissued, exclusively to the holders of the common stock at par, on the basis of fifty per centum of their holdings in common stock, they demanded the right to subscribe to their proportionate share of the additional issue of 20,000 shares of the common stock upon the terms upon which it was offered to the holders of the common stock, and offered to subscribe to the same upon the same terms; that their offer to so subscribe to their proportionate part of the additional issue of common stock was rejected by the corporation, whereby they alleged that they suffered wrong and injury, inasmuch as the market value of the common stock was $200.00 or more per share, while it was to be issued to the common stockholders at $100.00 per share. The relief sought was that the contract under which the preferred stock of the defendant corporation was issued might be properly construed by the court and the rights of the holders of the preferred stock might be adjudicated, protected and enforced by its decree.

The mills filed a demurrer to the bill setting forth six grounds therefor. The cause was heard on the bill and exhibits and the demurrer. The trial court, by decree entered on July 28, 1921, sustained the demurrer and dismissed the bill.

An appeal was duly granted by one of the judges of this court, where later the trial court was reversed (*Thos. Branch & Co.* v. *Riverside and Dan River Cotton Mills Co., Inc., supra*). The opinion, after sustaining the sixth ground of demurrer, which was to the effect that the bill showed on its face that specific enforcement of the contract could not be had because the stock had already been paid for and delivered to the common stockholders, concluded: "Remanded to the circuit court,

with leave to the complainants to amend their pleadings, under Code section 6084, as may be necessary to conform them to the proper practice, thereby obviating the objection that their suit was not brought on the right side of the court, and have the case determined upon such amended pleadings; or to dismiss their bill and institute a new suit or suits at law, as they may be advised."

On July 3, 1924, the mandate of this court having been received by the circuit court, the following order was entered: "That this case be transferred from the equity to the common law side of this court and that the complainants have leave to so change or amend their pleadings as may be necessary to conform them to the proper practice, and that after the pleadings have been so changed and amended, the case shall be placed by the clerk on the proper docket of this court and proceeded with and determined upon such amended pleadings, the defendant being given a reasonable time after such transfer in which to prepare the case for trial."

Upon the entry of this order Branch & Company independently of the other complainants in the original bill amended their pleadings in the chancery suit in order to make them conform to the proper practice of law by filing a declaration in assumpsit. It was filed under the caption: "Amended pleadings filed under the order of court in the July term, 1924, to conform to proceedings on the law side of said court." The original bill was made a part of the declaration by reference; it set out in a special count practically the identical facts alleged in the bill, and the relief asked was for damages for breach of contract.

The mills demurred to the declaration but the trial court overruled the demurrer as to the first seven grounds but sustained the demurrer as to the eighth

ground, that is that the cause of action did not arise as of October 1, 1920. While Branch & Company excepted to this action of the court they asked leave to amended and changed the date, October 1, 1920, to February 15, 1919, which the court permitted them to do. The mills excepted to the action of the court in permitting the amendment, demurred to the amended petition and then filed a plea of the statute of limitations. A jury trial on April 15, 1925, resulted in a verdict for Branch & Company in the sum of $13,420.00, with interest from February 15, 1919, at six per cent per annum.

On the 12th day of May 1925, the court set aside the verdict of the jury and rendered judgment for the mills (defendant) on the ground that the amended declaration set forth a new cause of action and that the plea of the statute of limitation interposed by the mills was good.

This action of the court was based upon the idea that the cause of action accrued in this case on February 15, 1919, and that the amended pleadings having set forth a new cause of action and not having been filed until the November rules, 1924, more than five years from the date (February 15, 1919) of the accrual of the right, the statute of limitations barred a recovery.

From this judgment Branch & Company were awarded a writ of error, and the instant case is before us upon the single assignment of error, so far as Branch & Company are concerned, that the court erred in holding that the amended declaration sets out a new cause of action and that the statute of limitations interposed by the mills is good.

There are a number of cross errors assigned but they will be taken up and disposed of later.

[1-4] In view of the decision in *Thomas Branch &*

*Co.* v. *Riverside and Dan River Cotton Mills, Inc.*, 139 Va. 291, 123 S. E. 542, *supra,* which is the law of the instant case upon every question involved in that case and decided therein, the question here is a narrow one, and the proceedings succeeding the reversal of the cause and remanding it to the circuit court by way of amendments, so far as they were necessary to conform the case to the proper practice on the law side of the court, were made under express authority and by leave of this court, and are such amendments as cannot be questioned in this case upon this appeal. Moreover, every holding of this court upon the original appeal (whether express or necessarily implied), which was a necessary premise upon which the final finding, to wit, that Branch & Company were entitled to have the cause reversed and remanded with leave to amend as indicated, is the law of this case now (*Steinman* v. *Clinchfield Coal Corp.*, 121 Va. 611, at pages 620-621, 93 S. E. 684); and as a result of this, unless Branch & Company made out a new case by their amendments, the statute of limitations has no application to the situation, as the amendments relate back to the date of the filing of the original bill in equity, and the amended declaration is but a continuation of the original proceedings.

[5, 6] First, it is obvious that whatever might have been said in the opinion about not passing upon any ground of demurrer except the sixth (which was to the effect that the court of equity could not grant the relief prayed for because the sale of the common stock to the common stockholders had taken place before the bill was filed), reversing the case upon this ground and remanding it to the circuit court with leave to amend, "to make it conform to the proper practice," was necessarily not only a holding that there was no

merit in the other grounds of demurrer, but it was necessarily also a holding that Branch & Company had stated a case that entitled them to relief but for the fact that they filed their bill too late. This was not only the necessary implication, but it was expressly so held. But this is not all. It also necessarily follows that Branch & Company still had a remedy at law, probably inadequate, but a remedy nevertheless, else it would have been a futile thing to remand the cause and to have given them leave to remove the cause to the law side of the court and to amend to conform to the practice on that side. Under the circumstances all they had to do was to avail themselves of this leave, and then if they sustained the allegations of their original bill, as amended to *conform* to the proper practice, by proof, they were entitled to a verdict and judgment.

[7] Second, it is obvious that if they did not amend their pleadings so as to make out a new case the statute of limitations does not apply.

There can be no real controversy about this. In *Friederichsen* v. *Renard, Executor*, 247 U. S. 207, 38 S. Ct. 450, 62 L. Ed. 1075, the syllabus is as follows: "Plaintiff, having been defrauded in an exchange of lands, sued in the district court to annul his contract and deed and for incidental damages. The court finding that by acts of ownership he had affirmed the contract, by its order, under Equity Rule 22, transferred the case to the law side as an action for damages for the deceit, and the bill was amended accordingly but with no substantial change in the allegations of fraud. Meanwhile, the period of the statute of limitations had expired.

"Held: (1) That the amendment did not change the cause of action and did not constitute the beginning of a new case.

"(2) That, since the money relief prayed in the amended petition could properly have been sought as alternative relief in the original bill in equity, and since the transfer to the law side was made upon order of the court in the exercise of its discretion, plaintiff could not be held to have made such an election of inconsistent remedies as would let in the defense of limitations against the amended demand." See also *New River Min. Co.* v. *Painter,* 100 Va. 507, 42 S. E. 300; *Snyder* v. *Harper,* 24 W. Va. 206-211; *Smith* v. *Palmer,* 6 Cush. (Mass.) 513, 519; *Yost* v. *Eby,* 23 Pa. St. 327, 331; *Wise Terminal Co.* v. *McCormick,* 107 Va. 376, 58 S. E. 584; *Bowman* v. *First Nat. Bank,* 115 Va. 463, 80 S. E. 95.

[8-12] In the instant case all of the material questions raised by the mills as to the amendments made were as to the amendments made pursuant to the authority or leave granted by this court, and were necessary amendments to conform to the practice at law, as a brief review of them will disclose. As pointed out by the mills they are, that the six plaintiffs associated with Branch & Company in the bill of compaint were dropped in the amended declaration and Branch & Company proceeded alone against the mills. This was but confirming the pleadings to the practice in a court of law, since several plaintiffs, although they may have a common cause of action, cannot join in an action against a common defendant. The amended declaration demands damages to the amount of $40,000, whereas the original bill prayed for specific performance of the contract. This was not a new action in this case. The order remanding the cause and permitting its transfer to the law side of the court and amendment necessarily implied that the action should sound in damages for breach of the contract which this court found, because of the circumstances of the case, could not be specifically enforced.

That the original bill claimed delivery to the extent of fifty per cent of the holdings of the preferred stockholders, whereas the amended pleadings claimed damages only as to twenty per cent of these holdings. There was nothing in this that made of the amended pleadings a new cause of action. It was only a correction to conform to facts which had been pointed out in the opinion upon the appeal. That there was no allegation as to value of the common stock in the bill in chancery, whereas the declaration alleged that it was of a much greater value than $100.00 per share. This was a change made necessary to conform to the practice in a law court. It was not necessary to declare the value of the stock in a proceeding to compel delivery of the stock but it was necessary to allege actual value when the proceeding under the holding of this court became one sounding in damages for failure to deliver, and this charge must have been in contemplation of this court when it remanded the cause with leave to amend. In any event it is not such a change as constituted a new cause of action. That the amendment was based on a cause of action arising on October 1, 1920, and the chancery suit was filed in September, 1920, which was before the cause of action mentioned in the amendments arose. The date (October 1, 1920) was changed by amendment, made by leave of the trial court, to February 15, 1919, to conform to the facts, so that as finally amended there is no inconsistency in the pleading.

[13] With the exceptions noted, which, as clearly appears, were changes made necessary by transfer of the cause from the chancery to the law side of the court, and must have been in the contemplation of this court when leave was granted to transfer and amend, and one or two immaterial changes which can by no possibility

make the amended pleadings a new cause of action, the amended declaration, of which the original bill was made a part by reference, stated a cause of action identical with that set out in the bill. Under these circumstances, for the reasons stated, the court erred in setting aside the verdict and entering judgment for the defendant. The plea of the statute of limitations should have been rejected.

In view of the foregoing it is necessary to consider the cross-errors assigned. They are:

1. The trial court erred in permitting the action in the case at bar to proceed in the names of the partners constituting the firm of Branch & Company, it having been shown in evidence that they did not own the stock either legally or equitably and had no interest in the same.

2. That the trial court erred in refusing to sustain the motions set out in bill of exceptions No. "A."

3. The trial court erred in refusing to give Instruction No. "C."

4. The trial court erred in refusing to set aside the verdict of the jury and enter judgment for the mills, for the reason set out in the fifth ground of the motion made to set aside the verdict of the jury and enter final judgment in favor of the mills.

5. The trial court erred in refusing to give instructions "D" and "G" requested by the mills.

6. The trial court erred in giving instruction No. 2 for Branch & Company.

[14] (1) The real question involved in this assignment is that while Thomas Branch & Company were plaintiffs in the proceedings, and while the stock was carried on the books of the corporation in their name and has always been held and managed by them, it developed in the evidence, that the real ownership

of the 671 shares of preferred stock was in the heirs of John P. Branch, four in number. It was equally clear that Thomas Branch & Company, the plaintiffs, were the agents for the John P. Branch heirs and that they were listed on the books of the defendant corporation as the owners of the stock. Under these circumstances there was no error in permitting the action to proceed in the name of Thomas Branch & Company.

[15] As was said by Judge Buchanan, in *Leterman* v. *Charlottesville Lumber Co.*, 110 Va. at page 772, 67 S. E. 283: "Where a person enters into a simple contract, oral or in writing, other than a negotiable instrument, in his own name, when he is in fact acting as the agent of another and for his benefit, without disclosing his principal, the other party to the contract may, as a general rule, hold either the agent or his principal, when discovered, personally liable on the contract. But he cannot hold both. 1 Min. Inst., page 236-7, and cases cited; 3 Rob. Pr. (New), 50, and cases cited; Clark & Skyles on Agency, sections 457, 568.

"It is also equally well settled that upon such a contract either the agent or the principal may sue; the defendant, where the principal sues upon it, being entitled to be placed in the same situation at the time of the disclosure of the real principal as if the agent had been the contracting party. *National Bank* v. *Nolting*, 94 Va. 263, 26 S. E. 826; 3 Rob. Pr. (New), 36, and cases cited; 1 Min. Inst. 239, and cases cited; Clark & Skyles on Law of Agency, section 614.

"If the agent of the undisclosed principal be sued by the other party to the contract the latter may recover such damages as have resulted from the breach of it on the agent's part. On the other hand, if such agent sues, he may recover such damages as have

resulted by reason of the breach of the contract by the other party—unless his principal interferes in the suit; and he is entitled to recover the full measure of damages in the same manner as though the action had been brought by the principal. See Clark & Skyles on Agency, section 624; Mechem on Agency, sections 755, 763; *Joseph* v. *Knox*, 3 Camp. 320, 321-2; *Gardner* v. *Davis*, 2 Car. & Payne, 49; *United States Tel. Co.* v. *Gildersleeve*, 29 Md. 232, 96 Am. Dec. 519, 522-3; *Rhoades* v. *Blackiston*, 106 Mass. 334, 8 Am. Rep. 322 [332], 333-4; 31 Cyc. 1564; *Shelby* v. *Burrow*, 76 Ark. 558, 89 S. W. 464, 1 L. R. A. (N. S.) 303; 6 Am. & Eng. Ann. Cases, 554 and note."

Among the authorities cited by Judge Buchanan is the note in 6 Am. & Eng. Ann. Cas., at page 556. We quote the following brief extracts from that note: "In contemplation of law, the agent is the real contracting party, for the reason that he assumes to act for himself, the principal whom he in fact represents being unknown in the transaction. *Tustin Fruit Assoc.* v. *Earl Fruit Co.* (Cal. 1898) [6 Cal. Unrep. Cas. 37], 53 Pac. Rep. 693; *Rowe* v. *Rand*, 111 Ind. 206, 12 N. E. Rep. 377. The fact that the consideration moves from the undisclosed principal rather than from the agent to the other contracting party is immaterial. *Colburn* v. *Phillips*, 13 Gray (Mass.) 64."

"In *Rhoades* v. *Blackiston*, 106 Mass. 334 [8 Am. Rep. 332], the court said: 'If the agent sues it is no ground of defense that the beneficial interest is in another, or that the plaintiff when he recovers will be bound to account to another. There is an additional reason for giving this right to the agent when he has a special interest in the subject-matter, or a lien upon it. But the rule prevails when the sole interest under the contract is in the principal. The agent's right is, of course, sub-

538 Branch & Co. v. Riverside Mills, 147 Va. 522.

ordinate to such and liable to the control of the principal
to the extent of his interest. He may supersede it by
suing in his own name, or otherwise suspend or ex-
tinguish it, subject only to the special right or lien
which the agent may have acquired.' "

"As it is competent for either the agent or the undis-
closed principal to sue, an offer by the defendant to
prove that plaintiff has an undisclosed principal is
held immaterial in *Buffington* v. *McNally*, 192 Mass.
198, 78 N. E. Rep. 309."

[16] (2) The motion referred to as embodied in bill
of exception "A," was that, as the evidence showed
that Branch & Company were not the real owners of
the stock which was the basis of the action, they be
required to substitute the real owners as plaintiffs,
and that after such substitution was made, the motion
would then be made to abate the action on the ground
that the parties were misjoined, because four stock-
holders owning one-quarter each of 671 shares cannot
join in one action at law against the defendant.

[17] There was no error in overruling this motion.
We have held that Branch & Company had a right to
bring the action, and that being so they were not bound
upon motion of defendant's counsel to substitute the
real owners of the stock, as the real owner had not
interfered, in order that the mills might move to abate
the action for misjoinder. One agent, who has made a
single contract for several principals, may maintain a
single action against a defendant for breach of it.

(3) Instruction C, which the trial court refused to
give upon request of the mills, was designed to tell the
jury that each stockholder who owned stock on January
1, 1919, must institute a separate action for recovery
of damages, etc. We have seen that under the circum-
stances of this case the instruction was inapplicable and
it was properly refused.

(4) This cross-assignment raises again the question of the non-joinder of parties plaintiff upon the motion to set aside the verdict. It was properly overruled upon this ground as heretofore made evident.

[18] (5) Instructions D and G, refused by the trial court, appear in the margin.* They were properly refused. They are in the teeth of the decision of this court in *Branch & Co.* v. *Riverside and Dan River Cotton Mills Co.*, 139 Va. 291, 123 S. E. 542, *supra.*

[19] (6) Instruction 1, which appears in the margin†, given at the request of Branch & Company, is in conformity with views expressed in *Branch & Co.* v. *Riverside and Dan River Cotton Mills, supra,* and correctly propounds the law except as to that part which

---

*The court instructs the jury that under the law the directors of the Riverside and Dan River Cotton Mills, Incorporated, had the right, when charter of said corporation was amended, to authorize an increase of the capital stock, to issue said stock and sell same upon such terms and conditions and for such considerations as the directors deemed for the best interest of the corporation as a whole and that, therefore, in this case the directors of this company had the right to sell such increase of common stock, shown by the evidence to have been made, to the common stockholders alone and the jury must find a verdict for the defendant unless the jury shall further believe from the evidence that in making said sale to the common stockholders alone the directors acted in bad faith and not in the exercise of their honest judgment for the best interest of the corporation as a whole.

The court instructs the jury that the plaintiff in this case is bound by the terms printed in the face of the stock certificate upon which this suit is based; that all earnings in excess of the dividend of six per cent per annum on the preferred stock of said corporation were the property of the common stockholder and could have been declared in the form of a cash dividend and paid to the common stockholders exclusively at any time; that under the preferred stock certificate the plaintiff cannot receive any greater or further dividend than six per cent per annum. If the jury believe from the evidence in this case that Thomas Branch & Company received said six per cent each and every year since they have held said stock, then this is the maximum amount Thomas Branch & Company can receive out of the earnings of said corporation, and if the jury believe that to allow Thomas Branch & Company damages in this suit would be to take out of the treasury of said corporation part of the earnings of said company in excess of six per cent per annum on said preferred stock, then the jury must find a verdict for the defendant.

†The court instructs the jury that if they believe from the evidence the defendant corporation in January, 1919, had outstanding 60,000 shares, or $6,000,000, of preferred stock and 40,000 shares, or $4,000,000, of common

told the jury to allow interest from January 1, 1924. The allowance of interest should have been left to the jury. Section 6259 of the Code provides: "In any action whether on contract or for tort, the jury may allow interest on the sum fixed by the verdict, or any part thereof, and fix the period at which the interest shall commence." In *Washington, etc., Ry.* v. *Westinghouse Co.*, 120 Va. 637, 89 S. E. 131, 91 S. E. 646, the declaration contained the common counts in assumpsit and also a special count upon the contract. The jury was given a peremptory instruction that if they found for the plaintiff they should allow interest from the time plaintiff's demand accrued under the terms of the contract, and the court held that this instruction was in conflict with the above-mentioned section and was such an invasion of the province of the jury as to constitute error.

Upon consideration of the whole case we are of opinion that, under the principles established by the decision in the former appeal in this case, the plaintiff has stated a case in his pleadings, and proved it by evidence, which entitled him to recover damages, and that it was error to set this verdict aside.

---

stock, or a total of 100,000 shares of both preferred and common stock of the par value of $10,000,000, and during that month authorized an increase in the amount of shares by an issue of 20,000 shares, or $2,000,000 worth, of common stock and that at said time plaintiffs were then and are now the registered owners on the books of the corporation of 671 shares of the preferred stock, and demanded the issue to them of their *pro rata* portion of such issue amounting to 134.2 shares and offered to subscribe and pay for same on the terms upon which said stock was sold by the corporation, and that thereafter the corporation did issue 20,000 shares of common stock exclusively to its common stockholders and refused and declined to issue to plaintiffs their 134.2 shares of said common stock, the defendant corporation thereby violated the rights of plaintiffs to purchase and take their *pro rata* portion of said stock, and the jury should find for Branch & Company in this action and assess their damages at the market price of said stock on February 15, 1919, less a credit of $100.00 per share which plaintiffs would have been required to pay to said corporation if they had been allowed to purchase said shares, together with interest on such amount of damages so fixed by the jury at six pr cent per annum from the 15th day of February, 1919.

We are further of opinion to reverse the judgment of the trial court, and Thomas Branch & Company, waiving any claim to interest prior to the verdict, and there appearing in the record sufficient to enable this court to enter judgment according to the right of the case, judgment will be entered in this court in favor of Thomas Branch & Company against the Riverside and Dan River Cotton Mills, Incorporated, for $13,420, with interest from the date of the verdict, to-wit, the 17th day of April, 1925, and also for their costs.

*Reversed.*