## 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## HODGES AND DEJARNETTE V. MABLE THORNTON
## AND OTHERS.

### January 17, 1924.

1. JOINT TENANTS AND TENANTS IN COMMON—*What Constitutes Tenancy in Common—Case at Bar.*—A will provided that a tract of land devised should be "cut off from my house tract, on the south side of said tract; adjoining the Poindexter tract and running north to McIver's line, and to embrace one hundred acres including the houses formerly occupied by John M. Moore." The will then gave to another devisee the rest of the house tract. Through successive deeds plaintiffs became seized of the first devise and defendants of the second.

   *Held:* That the occupancy of plaintiffs and defendants was undivided, so that neither the plaintiffs nor defendants knew their part in severalty; that the parties were tenants in common, and that a bill for partition was good upon demurrer.

2. JOINT TENANTS AND TENANTS IN COMMON—*What Constitutes Tenancy in Common.*—A tenancy in common requires no other unity than that of possession. The occupancy of the lands is *undivided* and neither of them knoweth his part in severalty. If two or more persons are entitled to land in such manner that they have an undivided possession, but several freeholds, they are tenants in common.

3. JOINT TENANTS AND TENANTS IN COMMON—*Tenancy in Common—Creation of Tenancy in Common.*—In case of a devise or bequest of property to several persons to be divided equally, share and share alike, or otherwise, between or among them, the property passes to the beneficiaries as tenants in common, and where a deed is of a given quantity of land, parcel of a larger tract, and the deed fails to locate the quantity so conveyed by a sufficient description, the grantee, on delivery of the deed, becomes interested in all the lands embraced within the larger area, as tenant in common with his grantor.

4. JOINT TENANTS AND TENANTS IN COMMON—*Tenancy in Common—Criterion.*—The criterion of a tenancy in common is, that no one knoweth his own severalty; and hence the possession of the estate necessarily is in common until a legal partition be made. But of an estate in

o

severalty the criterion is, that a man knows what he has the exclusive right of possessing; and his possession is sole, because no person has a right to occupy with him.

5.  JOINT TENANTS AND TENANTS IN COMMON—*Creation of Tenancy in Common—"To be Divided Equally"—"Share and Share Alike."*—For a devise, grant or conveyance, to create a tenancy in common, it is not essential that it should contain the language "to be divided equally," or "share and share alike," or in any designated proportions, or any like provisions, in the words of severance, having reference to the whole land which is to be divided. Where there are words of severance, the material requisite to create a tenancy in common is that the words shall indicate a future division of the property by line or lines not definitely designated by such words. If the words of severance, whatever they may be, fail to give such definite designation of the several parts of the land that their boundaries can be located on the ground by following such designation, with the aid of such extrinsic evidence only as is admissible under the well settled rules on the subject of locating the boundaries of land conveyed by a deed, a tenancy in common will be created.

6.  APPEAL AND ERROR—*Final Decree—Decree Transferring Suit to Law Side of the Court—Decree Adjudicating Principles Involved.*—A decree in a partition suit, which transferred a cause from the equity to the law side of the court, was a final decree, in that it denied the whole of the relief prayed in the bill and in effect dismissed the bill and remanded the complainants to another forum, namely, the law side of the court. But if the decree was not final, it certainly adjudicated the principles involved, and hence was an appealable decree.

7.  BOUNDARIES—*Statutory Proceedings to Determine Under Section 5490 of the Code of 1919—Partition.*—The statutory proceeding to determine boundaries under section 5490 of the Code of 1919 was not intended as a substitute for a suit for partition, nor does it afford the same relief. The former proceeding is governed by the same principles as obtain in an action of ejectment. The court has no jurisdiction therein to establish lines which have never been designated with proper certainty by the source of title of the plaintiff. Whereas that is precisely the relief which a suit for partition in kind affords to those who own several freeholds in the same land, which have never been divided in severalty with respect to the right of possession, by definite designation, in the source of title, of the dividing line or lines.

Appeal from a decree of the Circuit Court of Campbell county.  Decree for defendants.  Complainants appeal

*Reversed  and  remanded.*

This is a suit for partition, brought by the appellants, T. E. Hughes and T. F. DeJarnette, partners in trade under the firm name and style of Hodges & DeJarnette (hereinafter referred to as plaintiffs), against the appellees, Mable Thornton and others (hereinafter referred to as defendants), the object of which is to have partition in kind between the plaintiffs and defendants of a certain tract of land (the total acreage not being stated in the bill), which tract of land, the bill alleges, was devised by the will of one Mary G. Hubbard to the predecessors in title of the plaintiffs and defendants, respectively, and has never been partitioned. The bill further alleges that the said will devised to Sallie J. and Clara M. Moore, predecessors in title of the plaintiffs, 100 acres of said tract, but that such 100 acres "has never been cut off to them nor to any of their successors in title;" and the bill also alleges that the residue of said tract was devised to Mrs. Bettie T. Moseley, predecessor in title to the defendants.

The bill exhibits therewith certified copies of said will and of certain deeds in the respective chains of title of the parties.

The first deed in the chain of title of the plaintiffs is from the said Sallie J. and Clara M. Moore and describes the land conveyed as "all of a certain tract of land lying and being in the county (named), adjoining the lands of * * Mrs. Mosely (and others named) containing 100 acres; this being the same land conveyed by the will of Mary G. Hubbard to Sallie J. Moore and Clara M. Moore, and recorded in Will Book 18, page 400." The subsequent deeds in the chain of title of the plaintiffs convey the land as containing 100 acres, and as adjoining the lands of certain persons named, but do not undertake to designate the location of the dividing line between such 100 acres and the

residue of the aforesaid tract which was devised to Mrs. Mosely, predecessor in title of the defendants, and such deeds respectively refer to the next preceding deed in the chain of title of the plaintiffs for further description of the 100 acres conveyed.

The aforesaid will devises the said 100 acres of land owned by the plaintiffs at the time of suit, as follows:

"4. I give to Miss Sallie J. Moore, fifty acres of land, and to Mrs. Clara M. Moore, fifty acres of land, the last two lots of land to be cut off from my house tract, on the south side of said tract, adjoining the Poindexter tract and running north to McIvor's line, and to embrace one hundred acres including the houses formerly occupied by John M. Moore."

Then follows in the will the devise to Mrs. Mosely of the residue of the tract mentioned in the bill, as follows:

"5. I give to Mrs. Bettie T. Mosely my dwelling house and all the land attached thereto except what is herein willed to other persons."

The defendants filed a demurrer to the bill, and stated, in substance, the following as the grounds of demurrer:

That the aforesaid devises of the respective portions of land to the predecessors in title of the plaintiffs and defendants, respectively, contained descriptions which passed separate title and right of possession to the 100 acres belonging to the plaintiff and to the residue of the original tract belonging to the defendants, so that the two portions of the original tract "are entirely separate and distinct" in right of possession and so that plaintiffs and defendants "are not and never have been * * tenants in common;" that they are merely adjoining landowners; that a court of equity has no jurisdiction to establish or settle the boundary line between adjoining landowners; and that whatever rights the plaintiffs

have in the premises may be established in a court of
law.

The cause was heard upon the bill, the exhibits
therewith filed and the demurrer, and thereupon the
decree under review was entered, which provided as
follows: "*  *  the court being of opinion that the
plaintiffs have proceeded in the wrong forum and should
have filed a petition to ascertain and settle the bound-
ary line between the complainants and the defendants,
in accordance with the statute for such cases made and
provided, it is ordered that this cause be and the same
is hereby transferred from the equity to the law side
of this court, with leave to the complainants, if they
shall be so advised, to so amend their bill as to make it
a petition for the ascertainment of the true boundary
line between complainants and defendants.   It is fur-
ther ordered that the clerk of this court do docket this
cause on the common law docket of this court."

*James S. Easley*, for the appellants.

*John D. Easley*, for the appellees.

SIMS, J., after making the foregoing statement, de-
livered the following opinion of the court.

The questions presented by the assignments of error
will be disposed of in their order as stated below.
[1]   1. Was the occupancy of the lands involved in
the instant case, that is, the possession (which means
the right to the possession), undivided, so that neither
the plaintiffs nor defendants know their part in sever-
alty?

The question must be answered ·in the negative;
from which it follows that the parties are· tenants in

common and the bill for partition was good upon the demurrer.

[2] As said in 1 Minor or Real Property, section 919: "A tenancy in common requires no other unity than that of possession. The occupancy of the lands is *undivided* and neither of them knoweth his part in severalty." See also for same proposition, Minor's Inst. (4th ed.), p. 497.

As said in 7 R. C. L., sec. 8, p. 816: "* * if two or more persons are entitled to land in such manner that they have an undivided possession, but several freeholds, they are tenants in common."

[3] As said in 17 Am. & Eng. Ency. L. (2d ed.), p. 655: "In case of a devise or bequest of property to several persons to be divided 'equally,' 'share and share alike,' *or otherwise,* between or among them * * the property passes to the beneficiaries as tenants in common * *." (Italics supplied.) Citing numerous authorities, and among them *McCamant* v. *Nuckolls,* 85 Va. 331, 12 S. E. 160.

In *McCamant* v. *Nuckolls,* which was a suit for partition, the devise involved was as follows: "* * I * * will and bequeath to my daughter, Lucinda Hale, one-half of the lands, home place and Warrick place, her half to be taken off the entire tract next to Elk creek, and to include timber sufficient for said half, next to Martha Brewer's and William Rudie's;" and the will devised the other half of the lands to four other daughters. The court held that such devises created a tenancy in common of the five daughters in all of the land.

In *Schenk* v. *Evoy,* 24 Cal. 104, the conveyance was of 1,000 acres of a larger tract mentioned, lying in a certain valley, the 1,000 acres being designated and described as follows: "Having for the eastern boundary

thereof a line following the course of San Pablo creek as it now runs (which bounded the larger tract on the east) through the centre thereof from the northern to the southern extremity of said valley and extending back westward from said line so as to include one thousand (1,000) acres of land, and no more, on the western side of said valley; said land to be laid off, as near as possible, in a square form; all of the lines, except the · first mentioned line, to be straight, conforming with the cardinal points by true meridian.''

In the opinion of the court this is said: ''Where a deed is of a given quantity of land, parcel of a larger tract, and the deed fails to locate the quantity so conveyed by a sufficient description, the grantee, on delivery of the deed, becomes interested in all the land embraced within the larger area, as tenant in common with his grantor; and as such tenant, the grantee can claim a partition under proceedings instituted for that purpose, or, alternately, a partition may be made by amicable agreement between the parties,    *   *.

The court further states, in substance, that the principle involved in such holding is the same as that involved in the decisions holding that under a conveyance to a grantee of a certain number of acres of a larger tract, to be selected by the grantee at his election, the grantee becomes tenant in common with the owners of the residue of the tract; citing *Jackson* v. *Livingston*, 7 Wend. (N. Y.) 136, one of such decisions. See also on latter subject, 17 Am. & Eng. Ency. L. (2d ed.), p. 663; *Dohoney* v. *Womack*, 1 Tex. Civ. App. 354; . 19 S. W. 883, 20 S. W. 950; *Brown* v. *Bailey*, 1 Metc. (Mass.) 254.

In *Griswold* v. *Johnson*, 5 Conn. 363 (an action of ejectment), the devise was as follows:    ''To my two sons, Dyar and Benjamin, I give and bequeath    *    *

that part of my farm which lies eastwardly of Wolf-Swamp brook, to be equally divided between them for quantity and quality, and that my son Dyar have the part next the brook." . The farm contained thirty-seven acres. The administrator gave the son Dyar, the plaintiff, a deed to seventeen acres thereof by metes and bounds. The plaintiff claimed that he took the seventeen acres under the aforesaid devise and deed as an estate in severalty. The court held that he did not take an estate in severalty but took an estate in common with the son Benjamin in the whole farm of thirty-seven acres.

[4] In the opinion this is said:

"1.   Tenants in common are such as hold by unity of possession, because none knoweth his own severalty, and they occupy promiscuously. Co. Litt., sec. 292; 2 Bla. Comm. 191. The infallible criterion of this species of estate is, that no one knoweth his own severalty; and hence the possession of the estate necessarily is in common until a legal partition be. made. But of an estate in severalty the criterion is that a man knows what he has the exclusive right of possession; and his possession is sole because no person has right to occupy with him.   *   *   Now, in the case under discussion, the devise to Dyar and Benjamin of a tract of land constituted a tenancy in common on the preceding principle; and this more particularly is evinced by the words 'to be equally divided between them for quantity and quality,' an expression indicating a future. division of the property devised. The expression that 'Dyar to have the part next the brook,' construing the devise in all of its parts together, denotes merely this: That when a future division of the property shall be made, Dyar shall have his portion assigned him in the place specified. It, however, has no possible effect

on the tendency in common necessarily arising from the unity of possession; nor can it operate to produce such an estate, unless by exchanging the former words instead of giving them their legal construction. The claim that Dyar had devised to him an interest in severalty is not a little extravagant, inasmuch as the wisdom of the wisest would be baffled in the ascertainment of the bonds of this supposed several estate * * *."

"2. The deed of this common estate by metes and bounds, the one tenant in common thus attempting to make a partition of the property, without any co-operation of the other, is, undoubtedly, void. The point is at rest and not to be questioned." (Citing cases.)

In *Midgett* v. *Midgett*, 117 N. C. 8, 23 S. E. 37 (a proceeding for partition) the will devised as follows:

"2. I give and bequeath unto my son Spencer D. Mann, one-fourth part of all the lands I possess, beginning at Joseph Caroon's N. W. line, running N. W. by a straight line across the land * *.

"3. * * to my son Samuel E. Mann, one-fourth part of all the lands I own, beginning at Spencer D. Mann's N. W. line, running N. W. * *.

"4. * * unto my son Thos. R. Mann, one-fourth part of all the lands I own, beginning at Samuel E. Mann's N. W. line, running N. W. * *.

"5. * * to my son W. K. Mann, one-fourth part of all the land I own, beginning at Thos. E. Mann's N. W. line, running N. W. * *.

"The amount of land and marsh agreeable to estimation is six hundred and seventy acres. I require that the upland be examined by good punctual men and as far N. W. as considered to be fit for cultivation. I want to begin at Joseph Carson's N. W. line and be equally divided into four parts, share and share alike, by running straight lines across the land from the water

to the back lines. The N. W. of privilege land and marsh, I wish to be equal to each brother for range."

The plaintiff and defendants were assignees and devisees of the devisees named in the will. The plaintiff alleged a tenancy in common and asked for partition. The defendants demurrer and answered, claiming that they held their lands in severalty, and the court so held, dismissing the proceeding. The Supreme Court reversed this holding.

In the opinion of the latter court this is said: "The general rule seems to be that when a will locates the lands by name or metes and bounds so that each party knows his land; or where they are located with such certainty that a surveyor can take the will and locate them * * *, that the devisees would hold in severalty, and not as tenants in common. In this case, did the parties know where their metes and bounds were, or could a surveyor take the will and locate the different lots We think not. * *"

After referring to considerations arising from the will, other than the lack of certainty in the designation of the division lines, such as that the provisions that the land was to be examined by "good and punctual men as far * * as considered to be fit for cultivation;" that the division was to be "equal," which the court held meant equal in value; that the land was to be divided into four parts "share and share" alike; all having reference to a partition to be made subsequently to the probate of the will rather than to a definite designation of the lines by the will itself; the opinion concludes as follows: "We are therefore of the opinion that plaintiff and defendants are tenants in common and that the rulings * * appealed from are erroneous. The proceeding should be restored to the docket and proceeded with according to law in cases for partition among tenants in common, and it is so ordered."

[5]    From the authorities cited it is apparent that for a devise, grant, or conveyance, to create a tenancy in common it is not essential that it should contain the language "to be divided equally," or "share and share alike," or in any designated proportions, or any like provisions in the words of severance, having reference to the whole land which is to be divided.    If the words of severance, whatever they may be, fail to give such definite designation of the several parts of the land that their boundaries can be located on the ground by following such designation, with the aid of such extrinsic evidence only as is admissible under the well settled rules on the subject of locating the boundaries of land conveyed by a deed, a tenancy in common will be created.

[6] 2. Was the decree under review an appealable decree?

The question must be answered in the affirmative.

It is argued that inasmuch as the decree did not dismiss the case, but merely transferred it to the law side of the court, it was not a final decree and hence not appealable as such.

We think that it was a final decree in that it denied the whole of the relief prayed in the bill and in effect dismissed the bill and remanded the plaintiffs to another forum, namely, the law side of the court.    But if it was not a final decree, it certainly adjudicated the principles involved, and hence was an appealable decree. *Johnson* v. *Mundy*, 123 Va. 730, 97 S. E. 564.

[7] 3. Does the statutory proceeding, under section 5490 of the Code, afford the plaintiffs the relief sought by the bill for partition?

The question must be answered in the negative.

The statutory proceeding in question was not intended as a substitute for a suit for partition, nor does

it afford the same relief.   The former proceeding is governed by the same principles as obtain in an action of ejectment.   The court has no jurisdiction therein to establish lines which have never been designated with proper certainty by the source of title of the plaintiff. *Bradshaw* v. *Booth*, 129 Va. 38-9, 105 S. E. 555. Whereas that is precisely the relief which a suit for partition in kind affords to those who own several freeholds in the same land, which have never been divided in severalty with respect to the right of possession, by definite designation, in the source of title, of the dividing line or lines.

It was stated in oral argument before us that there was an answer filed in the case by the defendants which alleged that there has been a partition of the lands in question under a decree of court having jurisdiction. The record before us does not disclose this, and according to the record the case was heard and decided upon the bill, exhibits and demurrer alone.

If there is such an answer, the case will, of course, be further heard in the court below upon the issue or issues tendered thereby and upon the proof adduced upon such issue or issues.

Upon the record before us the decree under review must be reversed, and the cause will be remanded to the court below for further proceedings not in conflict with the views expressed in this opinion.

*Reversed and remanded.*