# Richmond.

## LOUANNA COLVIN AND WILL A. COOK, EXECUTORS OF F. M. COLVIN, DECEASED *v.* L. P. BUTLER.

### May 24, 1928.

1. ACTIONS—*Suits in Equity—Law and Equity Sides of the Court—Section 6084 of the Code of 1919—Transfer of Case from the Chancery Side of the Court to the Law Side, Re-Transfer by the Court on its Own Motion—Case at Bar.*—Complainant filed a bill in equity against executors of his vendor to recover part of the purchase money paid by him on the purchase price of land. Complainant alleged in his bill a verbal contract under which he could at any time abandon his purchase and receive back the money he had paid; that he had decided he did not want the land; and had so notified his vendor. The judge in vacation, of his own motion, ordered the case to be transferred to the law side of the court. Amended pleadings were filed to conform to the practice of law and the case went to trial before a jury, but after examination of the plaintiff the court, of its own motion, transferred the case back to the chancery side of the court. To this action defendants excepted and exception was overruled, and when the cause came to be heard on the merits there was a judgment for complainant.

    *Held:* That there was no error in the action of the lower court.

2. ACTIONS—*Suits in Equity—Law and Equity Sides of the Court—Section 6084 of the Code of 1919—Transfer of Case from the Chancery Side of the Court to the Law Side, Re-Transfer by the Court on its Own Motion—Case at Bar.*—In the instant case complainant instituted a suit in equity. The court, of its own motion, transferred the cause to the law side of the court, but when the case came to trial on the law side the court, of its own motion, re-transferred the case to the chancery side. The cause was plainly one which addressed itself to equity. Defendants contended that the decree which transferred the cause to the law side of the court was a final one and that it was too late on appeal to question that order. They further contended that the court was in error when it undertook to re-transfer this litigation from the law docket to the chancery docket for the reason that when the case went back it was met with a finding to the effect that equity had no jurisdiction, which finding was final and amounted to an adjudication of that proposition.

*Held:* That such a construction of section 6084, in regard to transfers from one side of the court to the other, as that contended for by the defendants could not be sustained.

3. ACTIONS—*Suits in Equity—Law and Equity Sides of the Court—Section 6084 of the Code of 1919—Purpose of the Act.*—If section 6084 of the Code of 1919, providing for the transfer of cases from one side of the court to another, had never been enacted, and if complainant had first brought a suit in equity which the court of its own motion erroneously dismissed for want of jurisdiction, an action at law might afterwards have been properly dismissed for the same reason, and he, the complainant, would have been without remedy had he not appealed from the first order in time. It was to prevent such a miscarriage of justice that the statute, section 6084 of the Code of 1919, was passed.

4. STARE DECISIS—*Opinions of Court—Construction.*—All statements of law applicable to a case must be read in connection with the facts.

5. APPEAL AND ERROR—*What Degrees Appealable—Final Decrees—Interlocutory Decrees—Time of Appeal.*—Final decrees are appealable and interlocutory decrees sometimes are, but in the latter case the party aggrieved is not bound to appeal within six months, but where the requisites therefor exist may do so within six months after a final decree has been entered in the cause.

6. ACTIONS—*Suits in Equity—Law and Equity Sides of the Court—Section 6084 of the Code of 1919—Construction.*—Section 6084 of the Code of 1919, providing for the transfer of cases from one side of the court to the other, should be given a liberal and not a technical construction.

7. STATUTES—*Construction—Purpose of the Statute.*—In dealing with a statute the courts should follow its purpose whenever it is possible to do so.

8. APPEAL AND ERROR—*Records—Decree Transferring Case from One Side of the Court to the Other—Case at Bar.*—In the instant case the trial court, of its own motion, transferred the case from the chancery side to the law side of the court and then re-transferred it from the law side to the chancery side.

   *Held:* That upon appeal the appellate court would deal with the entire record as part and parcel of one transaction.

9. APPEAL AND ERROR—*What Decrees Appealable—Decree Transferring Case from One Side of the Court to the Other.*—A decree transferring a case from one side of the court to the other, under section 6084 of the Code of 1919, should be treated as appealable and not final. Then it may still be brought under review. Such error as was committed when the cause was transferred from equity to law was corrected when it was transferred back from law to equity.

10. VENDOR AND PURCHASER—*Verbal Contract Allowing Purchaser to Abandon His Purchase and Receive Back the Purchase Money—Case at Bar.*—

In the instant case complainant, a vendee, alleged that there was a verbal contract under which he could at any time he desired abandon his purchase and receive back any money he had paid the vendor. Vendee was the son-in-law of the vendor and vendor wanted his daughter to live near him, therefore, under the circumstances, there was nothing unreasonable in the contract.

*Held:* That the contract was not invalid as an unenforceable oral agreement for the sale of land and its rescission.

11. VENDOR AND PURCHASER—*Recovery of Purchase Money—Purchaser Refuses to Complete the Transaction.*—If the vendor is not in default and is willing and able to perform, and the purchaser refuses to complete the transaction, he cannot, as a general rule, recover what he may have paid towards the purchase money; and this according to the better view is true though the contract of sale is oral and for such reason cannot, on account of the statute of frauds, be enforced by action against the purchaser. This rule of the law is unquestioned but it is predicated upon the idea that there has been some violation of the contract by the vendee and that vendor was without fault.

12. VENDOR AND PURCHASER—*Parol Discharge of Contract.*—If an unconditional contract for sale can afterwards be set aside by an oral agreement, then for a stronger reason a contract which in the beginning provided that such might be done should be upheld.

13. VENDOR AND PURCHASER—*Parol Discharge.*—A parol discharge of a contract for the sale of land is valid. A contract in writing and by law required to be in writing may in equity be rescinded by parol.

14. VENDOR AND PURCHASER—*Parol Discharge—Proof should be Clear and Convincing.*—Proof of a rescission by parol of a contract for the sale of land, should be clear and convincing and should satisfy the mind that a rescission was intended by the parties. When the contract rests only in parol, either partial or full performance is necessary to the validity of the agreement.

15. VENDOR AND PURCHASER—*Agreement that Vendee Might Rescind the Contract and Recover Purchase Money—Amount of Recovery—Case at Bar.*—In the instant case vendor agreed that the vendee might at any time abandon his purchase and receive back the purchase money that he had paid. The vendee had the possession of the place during the year 1920, and therefore should be charged with interest on the purchase money debt. Parties agreed that the purchase money debt should therefore bear 4% interest and the court accordingly adopted that rate. After the vendee attempted to return the land according to the contract he should not be charged with interest nor was it his duty to continue to look after the farm. The depreciation of the farm was great but the vendee was not chargeable with this after he had notified the vendor of his purpose to exercise his right to abandon the farm.

The opinion states the case.

*Shackelford & Robertson* and *Will A. Cook*, for the complainant.

*E. H. DeJarnette, Jr.*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

Appeal from a decree of the Circuit Court of Madison county. Decree for plaintiff. Defendants appeal.

The parties to this litigation, plaintiff and defendants, will be designated as they were in the trial court.

The following statement in the petition for appeal gives us a fairly comprehensive view of the situation here:

"L. P. Butler filed a bill in equity to recover of the executors of F. M. Colvin, deceased, $1,300.00, paid by Butler to said F. M. Colvin in his lifetime on a contract of sale of land by said Colvin to said Butler, the said $1,300.00 being a part of the purchase money. The bill alleges there was a verbal contract, under which Butler, vendee, could at any time he desired abandon his purchase and receive back any money he had paid; that he decided he did not want the land, and so notified said Colvin through Colvin's son, January 5, 1921; that Colvin died on the 8th of January, 1921; that Butler, subsequently, repeatedly requested a return of his money, etc., etc.; and in his prayer for relief he alleges that the verbal agreement under which he purchased was void, for which reason the $1,300.00 should be returned to him. To this bill the defendants filed their demurrer and answer. The answer denied the right of the complainant to recover, stating the reasons, and alleging that if complainant was permitted to recover.

he should be required to pay the damages set up in the answer. The cause came to hearing on the demurrer, demurrer was sustained, and complainant given leave to amend, which was done, but no very material change was made. Consequently there was a demurrer to this amended bill, and the judge in vacation, of his own motion, ordered the case to be transferred to the law side of the court, and plaintiff was given leave to amend to 'conform to the practice of law in such cases.' The declaration was filed, bill of particulars and pleas, and the case went to trial before a jury. But after the examination of the plaintiff, the court, of its own motion, transferred the case back to the 'chancery side of the court, with leave to the plaintiff to amend his amended and supplemental bill heretofore filed.' To this action of the court defendants excepted. This amendment was made by writing it on the bottom of the 'amended and supplemental bill.' Defendants then moved to dismiss the said amended and supplemental bill so amended, but such motion was overruled. Then was filed a demurrer thereto, but the bill was retained and defendants held to answer, etc. Whereupon, defendants filed their demurrer and answer, denying complainant's right to recover, giving reasons for such denial, and setting up defendants' right to damages and rents and profits, in case complainant be held to have the right to recover the said purchase money."

As a matter of fact, plaintiff notified Colvin of his desire for rescission in the latter part of 1920. The farm in controversy contained about 224 acres and the price agreed upon was $7,500.00. It was situate in Madison county, and at the time of sale the plaintiff, who was Colvin's son-in-law, lived at Warrenton, in Fauquier county.

The cause then came on to be heard upon its merits,

on depositions and exhibits, etc.   Upon consideration
whereof the court, on November 1, 1926, entered a
decree by way of judgment in favor of the plaintiff for
$1,300.00, with interest from November 1, 1926.

[1-3] The defendants' position in short form is this:
They say that the decree which transferred the cause
to the law side of the court was a final one and that it
is now too late to question that order.   They further
say that the court was in error when it undertook to
re-transfer this litigation from the law docket to the
chancery docket for the reason that when the case
went back it was met with a finding to the effect that
equity had no jurisdiction, which finding was final
and amounted to an adjudication of that proposition.
The net result of this, if the defendants are right, is that
plaintiff's case can never be heard upon its merits, for the
cause is plainly one which addressed itself to equity.  Such
a construction of section 6084 of the Code would be un-
looked for and curious.   This attempt of the trial court
to conform to the provisions of a statute highly remedial
would result in denying to the plaintiff any hearing at
all.   If the statute in issue had never been enacted,
and if the plaintiff had first brought a suit in equity
which the court, of its own motion, erroneously dismissed
for want of jurisdiction, an action at law might after-
wards have been properly dismissed for the same reason,
and he, the plaintiff, would have been without remedy
had he not appealed from the first order in time.   It
was to prevent such a miscarriage of justice that the
statute was passed.

In *Hodges* v. *Thornton*, 138 Va. 112, 120 S. E. 865,
the court said:

"Was the decree under review an appealable decree?

"The question must be answered in the affirmative.

"It is argued that inasmuch as the decree did not

dismiss the case, but merely transferred it to the law side of the court, it was not a final decree and hence not appealable as such.

"We think that it was a final decree in that it denied the whole of the relief prayed in the bill and in effect dismissed the bill and remanded the plaintiffs to another forum, namely, the law side of the court. But if it was not a final decree, it certainly adjudicated the principles involved, and hence was an appealable decree. *Johnson* v. *Mundy*, 123 Va. 730, 97 S. E. 564."

[4] If this be construed to definitely state that the order first transferring the cause was, technically speaking, a final decree, then that statement was *dictum* and not necessary in any decision of the matter then in judgment. All that the court had to decide was that the decree under review was an appealable decree, and it is in fact manifest that the court did not desire to commit itself definitely further. All statements of law applicable to a case must be read in connection with the facts.

[5] Final decrees are appealable and interlocutory decrees sometimes are, but in the latter case the party aggrieved is not bound to appeal within six months, but where the requisites therefor exist may do so within six months after a final decree has been entered in the cause. Barton's Chancery Practice (3rd ed.) 949; *Southern Ry. Co.* v. *Glenn*, 98 Va. 309, 36 S. E. 395.

*Thomas Branch and Company* v. *Riverside and Dan River Cotton Mills, Inc.*, 147 Va. 522, 137 S. E. 614, is very much in point; that was a suit in equity afterwards transferred to the law side of the court. The statute of limitations was pleaded but the court said that it was obvious that the amended pleading related back to the date of the filing of the original bill, and that

this was always true unless the declaration stated a new cause of action. See also *Friederichsen* v. *Renard, Ex'or*, 247 U. S. 207, 38 S. Ct. 450, 62 L. Ed. 1075.

[6–9] We should, of course, in dealing with a statute, follow its purpose whenever it is possible to do so and it is likewise manifest that it would here be in the interest of justice to give to it a liberal and not a technical construction. This can readily be done by dealing with this entire record as part and parcel of one transaction. If we treat the decree as appealable and not final, then it may still be brought under review. Such error as was committed when the cause was transferred from equity to law was corrected when it was transferred back from law to equity. This we hold is reasonable. It does no violence to the language of the statute and it does what should be done whenever it is possible to do it. It gives to the plaintiff one fair trial, something to which he is entitled in good conscience and under the statute. If this be not true then a statute designed as a buckler becomes a sword.

[10] What of the contract which permitted the vendee to receive back his payments? It has been clearly and satisfactorily proven. In the circumstances it was not unreasonable. Butler, the son-in-law, lived at Warrenton, in Fauquier county. Mr. Colvin lived in Madison county and wanted his daughter to live near him. It was to accomplish this purpose that this somewhat unusual inducement was incorporated into it. As a further defense it is said that even if there was such a contract it is unenforceable upon its merits and invalid under the statute of frauds. It might have been performed within a year and so if invalid at all it is because it was an unenforceable oral agreement for the sale of land and its rescission.

The law relied upon to sustain this contention has thus been stated:

[11] "If the vendor is not in default and is willing and able to perform, and the purchaser refuses to complete the transaction, he cannot as a general rule recover what he may have paid towards the purchase money; and this according to the better view is true though the contract of sale is oral and for such reason cannot, on account of the statute of frauds, be enforced by action against the purchaser." 27 R. C. L. section 378.

This statement of the law has been approved by Mr. Minor:

"It may be asserted with confidence that a party who has advanced money, or done an act in part performance of an agreement, and then stops short, and refuses to proceed to the ultimate conclusion of the agreement, the other party being ready and willing to proceed and fulfill all his stipulations, according to the contract, has never been suffered to recover for what has been thus advanced, or done. * * * * It would be an alarming doctrine, to hold, that the plaintiffs might violate the contract, and because they chose to do so, make their own infraction of the agreement the basis of an action for money had and received. Every man who makes a bad bargain, and has advanced money upon it, would have the same right to recover it back that the plaintiffs have. The defendant's subsequent sale of the land does not alter the case. * * * * The plaintiffs cannot, by their own wrongful act, impose upon the defendant the necessity of retaining property which his exigencies may require him to sell. This would be most unreasonable and unjust, and is not sanctioned by any principles of law." 2 Min. Inst. (2nd ed.) 781.

The law as thus formulated is not questioned and should be enforced in a proper case, but it is predicated upon the idea that there has been some violation of the contract by the vendee and that the vendor is without fault.

Suppose the vendor had brought a suit to enforce this contract. At the hearing it would have appeared that it was oral and it would have further appeared that he had in substance solemnly promised to institute no such suit, for it would have been shown that one of its express provisions was that the vendee might rescind it at any time he desired to do so. It is plain that the vendor could not recover without proving what the entire agreement was. He would not have been permitted to prove one part of it and then stop.

[12] If an unconditional contract for sale can afterwards be set aside by an oral agreement, then for a stronger reason a contract which in the beginning provided that such might be done should be upheld.

[13, 14] "It is a rule announced in a number of cases that a parol discharge of a contract for the sale of land is valid." 38 A. L. R. 295.

In *Ely* v. *Jones*, 101 Kan. 572, 168 Pac. 1102, the court said:

"The statement in the opinion in *Carr* v. *Williams* [17 Kan. 575], *supra*, that such an agreement falls within the statute of frauds, and is void unless in writing or fully executed, is disapproved, and we hold, with what we consider to be the weight of authority and sound reasoning, that such a contract is not required to be in writing, and may be established by the same kind of proof as other simple contracts."

"It has been held in some of the earlier cases that an agreement to rescind is as much an agreement concerning land as the original contract, and hence should

be in writing; but all the later cases, both in England and the United States, are unanimous in affirming that a contract in writing, and by law required to be in writing, may in equity be rescinded by parol, and this even though the contract may have been under seal. Such rescission may be effected not only by an express agreement, but by any course of conduct clearly indicating a mutual assent to the termination or abandonment of the contract. It may consist either of words or acts, and all the circumstances attending the transaction may be shown to prove intention; but if evidenced by acts alone they must be such as to leave no doubt as to such intention." 2 Warvelle on Vendors (2nd ed.) section 826.

In 39 Cyc. 1355, it is said:

"A written contract for the sale of land, while still executory, may be rescinded by a subsequent oral agreement between the parties. However, proof of the rescission by parol of a contract for the sale of land should be clear and convincing and should satisfy the mind that a rescission was intended by the parties. * * * * When the contract rests only in parol, either partial or full performance is necessary to the validity of the agreement."

See also Maupin on Marketable Title (2nd ed.), section 236; and *Flaherty* v. *Goldinger*, 249 Mass. 564, 144 N. E. 374. If a contract in writing may be revoked by parol, then a *fortiori*, a contract by parol may be revoked by parol.

In the case in judgment, the situation as we have seen was reasonable and understandable. The challenged stipulation was one of the major inducements of purchase. If the arrangement should prove unsatisfactory, the parties were to be placed in *statu quo*.

We, therefore, are of opinion that the contract set

up by the plaintiff in his bill is valid and it only remains
to determine just what his recovery should be.

As is usually the case in contracts within the family,
this was doubtless preceded by many informal discus-
sions and so it is not easy to say upon just what date a
definite conclusion was reached.   We believe, however,
that it is fair to assume that it was on January 7, 1920,
the date of the first payment, in amount $400.00, evi-
denced by two checks.   And for a like reason there is
some doubt as to when Butler notified Colvin that he
had decided not to keep the place.   In any event this
notification was very shortly before Colvin's death,
which occurred on January 7, 1921.   Colvin did
nothing when this notice was received beyond sug-
gesting to his son, Elmer, that he take Butler's place.
Colvin died and five or six months thereafter Butler
renewed his request that the place be taken back, this
time to the executors.   They also did nothing.

[15] Since Butler had possession of the place during
1920 he should be charged with interest on the purchase
money debt, by agreement to bear four per cent.   He
paid on January 7, 1920, $400.00, and on July the 28th,
the same year, $900.00.   If we charge him with interest
and credit him with these payments and deal with the
year in which he was in possession as running from
January 7, 1920, to January 7, 1921, there would be
due to him as of this last name date $1,030.31 with
interest at the rate of four per cent.   We adopt this
rate in this case as reasonable, since it was the rate
that the parties themselves seems to have agreed upon
as fair.   He should not be charged with interest after
he had attempted to return the place, for his indebt-
edness in equity stood cancelled as of that date, nor
was it his duty to continue to look after the farm.   He
did do this in a half-hearted way during the year 1921,

and collected about $40.00 on account of rent, and this he must be charged with. It is true that he did not give the farm then or at any time after his attempted surrender proper attention, but he was not required to give it any attention at all and so he cannot be charged with rents not collected nor with depreciation, after he had made known his purpose to rescind. This depreciation has been great, but if the contract for rescission was a valid one, and if the vendee notified the vendor of his purpose to exercise this right, then losses thereafter, due to neglect or to any other cause, must be borne by Colvin and now by his estate. We are of opinion that the plaintiff is entitled to recover $1,030.31, with interest from January 7, 1921, subject to a further credit of $40.00 which, since its date is not known should be applied on interest. With this modification, the decree appealed from should be affirmed, and it is so ordered.

*Decree modified and affirmed.*