# Wytheville

BUCHANAN COAL COMPANY, INC., ET ALS. V. W. A.
STREET, ET ALS.

June 10, 1940.

Record No. 2248.

Present, All the Justices.

532

534

The opinion states the case.

*Landon C. Bell, F. H. Combs, Greever & Gillespie* and *Burns & Lively,* for the appellants.

*Roland E. Chase* and *W. A. Daugherty,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

The chancellor sustained a demurrer to complainants' bill and, on his own motion, transferred the case from the chancery to the law side of the court. From that decree complainants sought and obtained this appeal.

Appellees contend that a decree transferring a case, under Code, sec. 6084, from the chancery to the law side of the court is not an appealable decree.

In *Hodges and DeJarnette* v. *Thornton,* 138 Va. 112, 122, 120 S. E. 865, 868, this is said: "It is argued that inasmuch as the decree did not dismiss the case, but merely transferred it to the law side of the court, it was not a final decree and hence not appealable as such.

"We think that it was a final decree in that it denied the whole of the relief prayed in the bill and in effect dismissed the bill and remanded the plaintiffs to another forum, namely, the law side of the court."

Mr. Justice Holt, in commenting on the foregoing statement, speaking for the court in *Colvin* v. *Butler,* 150 Va. 672, 678, 143 S. E. 333, 334, said: "If this be construed to definitely state that the order first transferring the cause was, technically speaking, a final decree, then that statement was *dictum* and not necessary in any decision of the matter then in judgment. All that the court had to decide was that the decree under review was an appealable decree, and it is in fact manifest that the court did not desire to commit itself definitely further. All statements of law applicable to a case must be read in connection with the facts." See *Quick* v. *Southern Churchman Co.,* 171 Va. 403, 416, 199 S. E. 489.

These authorities hold that a decree transferring a case from the chancery to the law side of the court is not a final decree, but that it is an appealable decree from which the losing party has the right to apply for a review.

The main question presented is whether a party, who owns the fee in one tract of land and the coal and mineral rights in an adjacent tract, can maintain a bill in equity against the owner of the surface to cancel and reform recorded instruments which create clouds upon the full title of both tracts, and to determine the boundary lines of the said adjacent tract, in which all parties are interested.

A synopsis of the controlling facts alleged in the bill is stated below.

On the 23rd day of September, 1904, the predecessor in title to complainants acquired certain coal, mineral and mining rights in and to two adjacent tracts of land lying on Levisa river in Buchanan county, Virginia. Henry M. Ratliff and wife were the grantors in the conveyance of the mineral rights, etc., in one tract designated as the "Fee Tract No. 27," containing 368 acres. James M. Ratliff and wife were the grantors in the other conveyance of the mineral rights, etc., in a tract containing 702 acres and designated as "Mineral Tract No. 100." The description of the boundary line between these adjacent tracts of land was the same in both deeds. Later, in 1906, the predecessor in title

of complainants acquired from Henry M. Ratliff and wife the fee simple title to "Fee Tract No. 27." The description of the boundary line between this tract and the other tract of land mentioned was the same as set forth in the other two deeds.

The rights of the parties, as set forth in these conveyances, remained unchanged and unchallenged until 1935; that is, complainants and their predecessors in title owned the coal, mineral and mining rights in and to "Mineral Tract No. 100" and fee simple title to "Fee Tract No. 27," and James M. Ratliff owned the surface of "Mineral Tract No. 100." Each of the owners of the adjacent tracts recognized and acknowledged the line described in the three deeds above mentioned as the boundary line between the two tracts.

James M. Ratliff died in 1935 intestate. His heirs at law instituted a partition suit and divided the surface of "Mineral Tract No. 100" between them. One of the heirs conveyed his interest to another. Thus F. M. Ratliff, W. A. Street and Frankie Street became the owners of the entire interest of James M. Ratliff to the surface of "Mineral Tract No. 100."

The commissioners appointed in the partition suit to make the division utterly disregarded the boundary lines of the James M. Ratliff land which they were purporting to partition, and thereby included a part of "Fee Tract No. 27" as a part of the James M. Ratliff tract. The report of the commissioners making the partition was purported to be confirmed by a decree entered in that suit on May 13, 1936. The draftsman of the decree undertook to embody an exact copy of this report in the decree, which was ordered to be recorded in the current deed book as well as in the current chancery order book of the court.

It is charged that the commissioners' report was incorrectly copied into the decree and that there were various other vital mistakes made in describing the boundaries to this tract. Six specific calls and distances, set forth in the survey incorporated in the commissioners' report, were

omitted from the decree as copied in the chancery order and deed books.

F. M. Ratliff, W. A. Street and Frankie Street, soon after they became the owners of the entire surface of "Mineral Tract No. 100," caused that part of this tract adjacent to "Fee Tract No. 27" to be subdivided into building lots. Two plots of the subdivision were duly recorded in the clerk's office of the Circuit Court of Buchanan county. These plots indicate that a certain part of the subdivision is dedicated to the general public for the use of streets, alleys and ways, and that certain other easements are dedicated for sewer, gas, water and light lines. Sixty or more lots in this subdivision have been sold and conveyed to as many different persons, all of whom are made parties defendant to the cause. The promoters of the subdivision claim the right and have announced their intention to sell other lots in the subdivision with the easements mentioned as rapidly as they can secure purchasers therefor.

It is alleged that the purported boundary line between the two tracts, as described by the commissioners' report in the partition suit, criss-crosses the boundary line established and recognized by Henry R. Ratliff and James M. Ratliff, the former owners of the two tracts, in such manner that a part of "Fee Tract No. 27" is included in the James M. Ratliff land and a part of the James M. Ratliff land is cut off to "Fee Tract No. 27;" that the mistakes in the calls and distances, and omissions from the decree, create confusion; and that the mistakes in the report of the commissioners, and the failure to make a true copy of this report in the decree, are so palpably erroneous that they amount to fraud upon complainants. These mistakes and omissions in the decree and the deeds to the lots, executed by the promoters of the subdivision, create clouds upon complainants' title.

It is also alleged that complainants have built and erected a large number of dwelling houses and other structures on "Fee Tract No. 27" for the convenience and use of their employees in connection with their business of mining coal;

that a proper, adequate and sanitary sewerage system has been constructed to serve these houses and structures; that respondents are using open sewers dangerous to the health of complainants' employees; and that these open sewers constitute a public nuisance and, as such, have been condemned by sanitary officers for the Commonwealth of Virginia.

Among other things, complainants pray that the various mistakes and errors in the boundary line of "Mineral Tract No. 100," made and committed in the partition suit, be corrected; that the fraud therein attempted to be perpetrated be so declared; that the fruits of said mistakes and fraud be denied to said respondents; that the various proceedings and decrees had in the partition suit, whereby the land of complainants was sought to be taken and appropriated by respondents, be cancelled, reformed and corrected so as to exclude from their operation any part of complainants' land; that all maps, plats, attempted dedications, contracts and deeds made by respondents or any of them, under which respondents seek to hold, claim or use any part of complainants' land, be cancelled and annulled; that F. M. Ratliff, W. A. Street and Frankie Street be perpetually enjoined and restrained from selling any additional lots laid off and numbered insofar as they include any part or parts of "Fee Tract No. 27;" that all of the respondents and those claiming under them be enjoined and restrained from trespassing upon complainants' property; and that the nuisances be abated.

It appears from these allegations (which the demurrer admits to be true) that the rights of complainants and respondents, so far as the rights pertain to "Mineral Tract No. 100," originated from a common source; namely, James M. Ratliff. He conveyed the coal, mineral and mining rights in the 702-acre tract to complainants' predecessor in title. These rights today are the identical rights conveyed by him in his deed bearing date September 23, 1904. The surface rights to this tract of land were retained by James M. Ratliff and, at his death in 1935, passed to his heirs at

law, who in turn have conveyed part of these rights, or rather the rights to different parts of the surface, to other respondents. The geographic extent of the rights under the surface is measured by the extent of the surface. The right of complainants to mine coal and mineral on and under "Mineral Tract No. 100" stops at the boundary line of this land. Any attempt to expand or contract the boundary line of this tract as it was on September 23, 1904, is an attempt to affect the rights of complainants. Under the circumstances of this case, the geographic extent of the surface and the geographic extent of the right to mine coal and minerals are measured by the same yardstick and must coincide. Any fraud or mistake appearing in a recorded muniment of title, which purports to change the boundary line of "Mineral Tract No. 100" as it was on the date of the alienation by James M. Ratliff, creates a cloud upon the title of complainants.

The relation of complainants and their predecessors in title to respondents and their predecessors in title is not that of tenants in common or joint tenants, as the effect of the deed dated September 23, 1904, severed the mineral interests from the surface. Hence complainants were not necessary parties in the suit to partition the surface of the tract. The relation of the parties as owners of the mineral and surface rights is not that of coterminous landowners; hence the remedy for settling disputed boundary lines, provided in Code, sec. 5490, is not available to either side. Ejectment does not lie, as neither side disputes the title of the other to their respective rights in and to this tract of land.

The gravamen of complainants' contention, respecting the rights of the parties in and to this particular tract, is that respondents have extended the southwest boundary some distance so as to include land of another tract, and that they have contracted part of the southwest and part of the southeast boundary lines so as to exclude from the tract land which is included by the true boundary line. One of the results, from complainants' point of view, is that

the boundary line, as claimed by the respondents, leaves a narrow strip of land between it and the adjoining tract which is not a part of either tract. Complainants, in conducting their mining operations, do not know which boundary line to follow, the one established by James M. Ratliff or the one attempted to be established by the commissioners in the partition suit. If the latter is the true boundary line, then it is not properly described in the decree of partition. Complanants acquired from James M. Ratliff certain definite rights to coal and minerals co-extensive with the known and acknowledged boundary of "Mineral Tract No. 100." The subdivision and sale of lots lying partly within and partly without these interlocks reveal an intention to ignore the established boundary line of "Mineral Tract No. 100," and will create endless confusion, involve numerous other parties in litigation, and result in a multiplicity of actions.

■ The right of complainants to know with certainty the limit or furthest extent of their coal and mineral properties acquired from James M. Ratliff is a substantial right, and a right which, under the circumstances of this case, can be asserted only in a court of equity.

■ An injured party is entitled to his redress whether the mistake of fact was made by the immediate parties or whether the mistake occurred in a description of the boundary lines made in a report of commissioners and decrees filed and entered in a partition suit, to which the injured person was not a party.

■ Judge Buchanan, speaking for the court in *Jefferson* v. *Gregory*, 113 Va. 61, 62, 73 S. E. 452, 453, said: "It is well settled in this State, and in many if not most jurisdictions, that relief from mistakes in judgments, decrees, or other court proceedings, may, in an otherwise proper case, be had if the mistake is not judicial, but one of fact. *Anderson* v. *Woodford, etc.*, 8 Leigh (35 Va.) 316, 328, 329; *Rust* v. *Ware*, 6 Gratt. (47 Va.) 50, 52 Am. Dec. 100; *Byrne and Wife* v. *Edmonds*, 23 Gratt. (64 Va.) 200; *Fore* v. *Foster*, 86 Va. 104, 9 S. E. 497; *Epes* v. *Williams' Adm'r*,

89 Va. 794, 17 S. E. 235; *Prince's Adm'r* v. *McLemore*, 108 Va. 269, 61 S. E. 802.

"There is no valid objection to proceeding by original bill to obtain relief from such a mistake in a court (having jurisdiction of the parties and the subject matter) other than that in which the mistake was made, when it cannot be corrected in that cause, since such mistake is not corrected by reviewing the judgment or decree of that court, but by restraining the parties who may take advantage of it from doing so, or by compelling them to execute proper papers for the purpose of correcting it. *Barnesly* v. *Powel*, 1 Ves., Sr., 284; *Byrne* v. *Edmonds, supra; Loss* v. *Obry*, 22 N. J. Eq. 52."

 It is immaterial whether complainants are or are not in actual possession of the coal and mineral on this tract of land. Code, sec. 6248, known as the White act, expressly provides that in such cases possession is not an essential allegation in a bill in equity filed to remove a cloud on the title. See *Payne* v. *Buena Vista Extract Co.*, 124 Va. 296, 98 S. E. 34. Even without the statute equity would have jurisdiction to determine the boundary lines under the facts stated. Judge Buchanan, in *Jefferson* v. *Gregory, supra,* said: "While the general rule is that the holder of the legal title to land cannot maintain a bill to remove a cloud from his title unless he is in possession * * * , *this rule does not, and ought not to, apply where the primary relief sought is upon another and well-established ground of equity, and the removal of the cloud is sought only as an incident to that relief.*" (Italics supplied.)

 The fact that complainants own the fee simple title to "Fee Tract No. 27," which bounds "Mineral Tract No. 100" on the southeast and southwest, does not deprive them of the right to have the established boundary lines of "'Mineral Tract No. 100" fixed and determined by a court of equity. It is true that, as owners of the fee in "Fee Tract No. 27," they might have proceeded under Code, sec. 5490, as coterminous owners of the surface with the owners of the surface of "Mineral Tract No. 100," to have the boundary

line between the tracts determined; but such a proceeding would not have afforded them the complete remedy sought; namely, a removal of numerous clouds upon the title to their coal and mineral rights in "Mineral Tract No. 100." Many of the same plats, contracts, and instruments, however, also create clouds upon their fee simple title to "Fee Tract No. 27." In determining the boundary line of "Mineral Tract No. 100," the court will necessarily determine the true boundary line between the coterminous tracts and at the same time remove all clouds affecting title to both tracts of land, which relief complainants could not have obtained in a legal action.

Judge Sims, speaking for the court in *Hodges and De-Jarnette* v. *Thornton*, 138 Va. 112, 122, 120 S. E. 865, 868, said: "Does the statutory proceeding, under section 5490 of the Code, afford the plaintiffs the relief sought by the bill for partition?

"The question must be answered in the negative.

"The statutory proceeding in question was not intended as a substitute for a suit for partition, nor does it afford the same relief. The former proceeding is governed by the same principles as obtain in an action of ejectment. The Court has no jurisdiction therein to establish lines which have never been designated with proper certainty by the source of title of the plaintiff."

" * * * . Courts of equity will not interpose to ascertain boundaries, unless, in addition to a naked confusion of the controverted boundaries, there is suggested some peculiar equity, which has arisen from the conduct, situation, or relations of the parties." 4 Pomeroy's Eq. Jur. (3d Ed.), sec. 1384.

The rights of respondents can be no greater than were the rights of James M. Ratliff, through whom they claim title to the surface. After the heirs of James M. Ratliff acquired possession of the property, they caused numerous instruments to be recorded which tend to seriously affect substantial rights of complainants. A court of equity is the only forum in which these alleged mistakes, whether in-

nocently or otherwise made, can be fully and completely determined, corrected and the clouds upon the titles removed.

There are other grounds for equity jurisdiction alleged in the bill and mentioned in the argument, but the foregoing discussion is sufficient to reveal the error committed by the trial court in denying complainants the right to proceed in the forum selected by them. Equity having acquired jurisdiction for one purpose may retain it for all purposes to do complete justice between the parties and determine all their rights in the controversy, even though legal rights are involved which otherwise could be enforced only in a court of law. *Dobie* v. *Sears, Roebuck & Co.*, 164 Va. 464, 180 S. E. 289, 107 A. L. R. 1026.

The decree of the trial court is reversed and the case remanded.

*Reversed and remanded.*