PRESENT:  All the Justices

COREY NEJATI, ET AL.

OPINION BY
v.   Record No. 121728          JUSTICE WILLIAM C. MIMS
September 12, 2013

STEPHEN P. STAGEBERG, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

In this appeal, we consider whether zoning laws may

restrict the sale of real property and particularly whether

Code § 15.2-2254 limits the ability of a seller to convey

severalty interests.

I.   BACKGROUND AND MATERIAL PROCEEDINGS BELOW

In 2005, Kristopher Angstadt acquired a parcel of real

property in the City of Fredericksburg.  The tax map maintained

by the City of Fredericksburg Commissioner of Revenue indicated

that the parcel was a single lot.  However, the Commissioner's

records also indicated that in 1942 it had been listed as two

separate "tax parcels."

In 2008, Angstadt hired Long Surveying, L.L.C. ("Long

Surveying"), to prepare a survey of the property.  The survey

drew boundary lines that corresponded to the boundaries of the

two tax parcels shown on the Commissioner's records from 1942.

The larger lot depicted on the survey was designated 901

Hanover Street (the "Hanover Property"), and the smaller lot

was designated 802/804 Littlepage Street (the "Littlepage

Property"). Angstadt recorded the survey; however, he did not submit it for approval by the City as a subdivision as set forth in Code § 15.2-2254 and Fredericksburg City Code ("City Code") § 78-1304(a).

Angstadt subsequently transferred the two purported lots to his real estate company, Properties By Us, L.L.C. ("PBU"), by two separate deeds. PBU converted a duplex on the Littlepage Property into a two-story apartment building. The Hanover Property was left undeveloped.

In June 2008, PBU conveyed the Littlepage Property, including the apartment building, to Corey and Robabeh Nejati by a deed that referenced and incorporated the previously-recorded survey. Two months later, in August 2008, PBU conveyed the Hanover Property to Stephen Stageberg. This deed also referenced and incorporated the survey.

By separate contract, PBU agreed to build a single family house for Stageberg on the Hanover Property. However, when PBU applied for a zoning variance, the City's Zoning Administrator concluded that a house could not be built on the Hanover Property since it had not been subdivided, and therefore did not exist as a separate lot, pursuant to Code § 15.2-2254 and City Code § 78-1304(a). Stageberg subsequently exhausted his administrative remedies but was unable to obtain a variance.

2

After reaching a settlement agreement with the title insurance company that insured his interest in the Hanover Property, Stageberg filed a quiet title action against the Nejatis in the Circuit Court of the City of Fredericksburg.[1] Stageberg alleged that the legal effect of the 2008 deeds from PBU to himself and to the Nejatis was to create a tenancy in common of the undivided parcel acquired by Angstadt in 2005, without regard for the Littlepage Property and Hanover Property boundaries as described in the survey and the 2008 deeds. The Nejatis responded that the 2008 deeds created two distinct estates in severalty, each with boundaries as described in the survey.[2]

In a letter opinion, the circuit court held that the claimed estates in severalty were impermissible because such result would effectively circumvent the requirements for a valid subdivision under Code § 15.2-2254(3) and City Code § 78-1304(a). Thus, the circuit court concluded that Stageberg and the Nejatis were tenants in common of the whole property. The court determined the percentage ownership based on the original

---

[1] Angstadt, his corporate alter egos, several financial institutions, and the trustees on the deeds of trust were also named as party-defendants. None of these parties have filed appearances in this Court.

[2] Alternatively, the Nejatis argued that because their deed was recorded first, it conveyed the whole property to them, leaving nothing for PBU to convey to Stageberg. However, they did not pursue this argument on appeal.

3

purchase prices that the parties had paid, which resulted in the Nejatis owning a 71.43 percent interest and Stageberg owning a 28.57 percent interest in the undivided parcel. This appeal followed.

## II.  ANALYSIS

The dispositive issue on appeal is whether the circuit court erred in holding that Stageberg and the Nejatis share ownership of the undivided parcel as tenants in common rather than as tenants by severalty.

It is well established in Virginia that a tenancy in common may be created when "a deed is of a given quantity of land, parcel of a larger tract, and the deed fails to locate the quantity so conveyed by a sufficient description." Hodges & DeJarnette v. Thornton, 138 Va. 112, 118, 120 S.E. 865, 867 (1924) (internal quotation marks omitted). In such instances, a tenancy in common results because "no one knoweth his own severalty; and hence the possession of the estate necessarily is in common until a legal partition [is] made." Id. at 119, 120 S.E. at 867 (internal quotation marks omitted). However, when a deed "locates the lands by name or metes and bounds so that each party knows his land[s] or where they are located with such certainty that a surveyor can take the [deed] and locate them, . . . the [transferees] . . . hold in severalty,

4

and not as tenants in common." Id. at 121, 120 S.E. at 868 (internal quotation marks omitted).

In this case, both Stageberg and the Nejatis know with certainty the property they purchased pursuant to their deeds. The Nejatis' deed describes their property as:

> ALL THAT certain lot or parcel of land with all rights and privileges appurtenant thereto, situate, lying and being in the City of Fredericksburg, Virginia, and known as #802, #804 Littlepage Street, containing 1,725.24 square feet as shown on a plat of survey dated April 2, 2008, by Long Surveying, L.L.C., Land Surveyors, which plat is recorded in the Clerk's Office of the Circuit Court of the City of Fredericksburg, Virginia, as Instrument No. 080000914; and commonly known as 802 and 804 Littlepage Street.

Stageberg's deed describes his property similarly:

> ALL THAT certain lot or parcel of land with all rights and privileges appurtenant thereto, situate, lying and being at the northwest corner formed by the intersection of Hanover and Littlepage Streets, in the City of Fredericksburg, Virginia, and containing 2,185.97 square feet as shown on a plat of survey dated April 2, 2008, by Long Surveying, L.L.C., Land Surveyors, which plat is recorded in the Clerk's Office of the Circuit Court of the City of Fredericksburg, Virginia, as Instrument No. 080000914; and commonly known as #901 Hanover Street.

The plat of survey by Long Surveying is expressly referenced and incorporated into both deeds. It is an accurate description of the properties conveyed. See Richardson v. J.S. Hoskins Lumber Co., 111 Va. 755, 757, 69 S.E. 935, 936 (1911);

5

State Savings Bank v. Stewart, 93 Va. 447, 453, 25 S.E. 543, 544 (1896) ("Where a map of land is referred to in a deed for the purpose of fixing its boundaries, the effect is the same as if it were copied into the deed.").

This property description in the deeds and plat of survey is sufficient to create estates in severalty. There are well-defined boundary lines, precise square footage, and a metes and bounds description for each parcel. Thus, the deeds clearly "locate[] the lands by name or metes and bounds so that each party knows his land[s] or where they are located." Hodges, 138 Va. at 121, 120 S.E. at 868 (internal quotation marks omitted).

Stageberg's only argument is that the description provided in the survey is rendered "indefinite" by Angstadt and PBU's failure to comply with Code § 15.2-2254 and City Code § 78-1304(a).

Code § 15.2-2254 states in relevant part:

2. No plat of any subdivision shall be recorded unless and until it has been submitted to and approved by the local planning commission or by the governing body or its duly authorized agent, of the locality wherein the land to be subdivided is located . . . .

3. No person shall sell or transfer any land of a subdivision, before a plat has been duly approved and recorded as provided herein . . . . However, nothing herein contained shall be construed as preventing the recordation of the instrument by which such land is

transferred or the passage of title as between the parties to the instrument.[3]

Neither Angstadt nor PBU submitted the survey for approval prior to conveying the Littlepage and Hanover Properties. Stageberg argues that until the parties comply with this requirement, the boundaries set forth in the survey are subject to change.  Therefore, he claims that the deeds are not sufficiently definite to create estates in severalty, and the parties own the whole property as tenants in common.

Stageberg contends that the language set forth in Code § 15.2-2254(3) is limited to the "parties to the instrument."  In other words, he argues that because he was not a party to the Nejatis' deed, their title to the Littlepage Property was not perfected against him.  Consequently, Stageberg claims that he and the Nejatis own the whole property as tenants in common, regardless of the boundaries described in the survey and incorporated in the deeds.  We disagree.

Failure to comply with Code § 15.2-2254 results in significant limitations on the use of the property by the owner; however, it does not prevent conveyance of the property. Stageberg's argument runs contrary to the long-standing presumption in favor of the right to free alienation of property.  See Lipps v. First Am. Serv. Corp., 223 Va. 131,

---

[3] City Code § 78-1304 contains substantively identical provisions.

7

135, 286 S.E.2d 215, 218 (1982); Cribbins v. Markwood, 54 Va. (13 Gratt.) 495, 506 (1856).

Although this Court has not directly addressed the consequences of not complying with Code § 15.2-2254, the Attorney General has concluded that the predecessor statute, former Code § 15.1-473,[4] only restricts the use of unlawfully subdivided property and does not affect the property interests transferred by deed.  See 1989 Op. Atty. Gen. 100.  Specifically, the Attorney General stated that "[a]n injunction obtained pursuant to [former] Code § 15.1-499 . . . would not be an effective remedy to prevent the transfer of title pursuant to a subdivision created in violation of . . . the subdivision ordinance.  Any future development of the divided property, however, could be restricted."[5]  Id.  Although it is not binding on this Court, an Opinion of the Attorney General

---

[4] Title 15.1 was recodified in 1997 as Title 15.2. 1997 Acts ch. 587.  The recodification made no substantive changes relevant to this appeal.

[5] This conclusion has twice been reached by Virginia circuit courts.  See Leighton v. Virginia Dep't of Health, 2001 Va. Cir. LEXIS 1, at *4 (Fauquier Cnty. Cir. Ct. 2001) ("[F]ailure to comply with applicable subdivision regulations does not prevent . . . the passage of title as between the parties to the instrument.  However, a failure to properly subdivide the parcel . . . places significant limitations on the use of the property by the owner."); Justus v. Lowell, 28 Va. Cir. 505, 508-10 (Loudoun Cnty. Cir. Ct. 1992) ("[W]hile the provisions of § 15.1-473 [Code § 15.2-2254's predecessor], place limitations on the use and development of 'subdivided' land, . . . they are not, absent enforcement, a bar to the alienation of land.").

is "persuasive" and may be used as an aid in construing legislative intent. Clinchfield Coal Co. v. Robbins, 261 Va. 12, 18, 541 S.E.2d 289, 292 (2001).

Transfers of property in violation of Code § 15.2-2254 are not free from consequence. Code § 15.2-2254(4) provides:

> Any person violating the foregoing provisions of this section shall be subject to a fine of not more than $500 for each lot or parcel of land so subdivided, transferred or sold and shall be required to comply with all provisions of this article and the subdivision ordinance.

(Emphasis added.) Clearly, persons who take title to unapproved lots are subject to laws regulating how such property may be developed. This necessarily results in Stageberg being unable to build a house on his property. However, it does not change the property interests conveyed to Stageberg and the Nejatis pursuant to their deeds.[6]

As discussed, the 2008 deeds were unambiguous as to the descriptions of the properties conveyed. Accordingly, Stageberg and the Nejatis hold the Littlepage and Hanover Properties in severalty, not as tenants in common.

---

[6] Although compliance with Code § 15.2-2254 is not a prerequisite to the ability to convey title, this does not guarantee that the title conveyed is marketable. See e.g., Justus, 28 Va. Cir. at 510-11. Stageberg initially filed claims against the seller for breach of contract, breach of covenants of title, and/or rescission. However, he subsequently nonsuited those claims.

III.  CONCLUSION

For the foregoing reasons, we will reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.[7]

<u>Reversed and remanded.</u>

---

[7] Because we find that Stageberg and the Nejatis hold distinct estates in severalty, we need not address the circuit court's allocation of ownership interests as tenants in common.