VIRGINIA HOWARD MURRAY *v.* T. BROOKE PRICE, *Executor, etc., et al.*

(No. 7741)

Submitted November 9, 1933. Decided December 12, 1933.

*Poffenbarger & Poffenbarger,* for appellant.
*Price, Smith & Spilman* and *A. B. Hodges,* for appellees.

MAXWELL, PRESIDENT:

Virginia Howard (now Murray) instituted this suit in equity against the executors of, and the beneficiaries under, the will of David C. Howard, deceased, for the purpose of subjecting the decedent's estate to the payment of a contractual indebtedness. From a decree, sustaining demurrers to, and dismissing, plaintiff's original and amended bills, plaintiff obtained an appeal. Subsequently, defendants, by motion to dismiss the appeal, challenged the jurisdiction of this Court on the ground that the decree of the chancellor was not appealable. Logically, the question of jurisdiction must be considered first.

The scope of appellate jurisdiction of this Court emanates from the Constitution (West Virginia) Article VIII, Section 3, and Code 1931, 58-5-1, and specifically, in the instant cause, from that portion of subsection (g) of said section 1 which authorizes appeal "In any case in chancery wherein there is a

decree or order * * * adjudicating the principles of the cause." In *Blackshere* v. *Blackshere,* 111 W. Va. 213, 215, 161 S. E. 27, 28, is this statement: "Finality of decree, in the sense that all issues must be decided, is required before an appeal can be obtained in those instances which involve that portion of sub-section 7, which allows an appeal to any decree or order 'adjudicating the principles of the cause'." It is a general proposition that appellate jurisdiction begins only where the trial tribunal's jurisdiction ends. *Shirey* v. *Musgrave,* 29 W. Va. 131, 143, 11 S. E. 914.

The trial chancellor, in sustaining the demurrers, was of opinion that the plaintiff had shown "no grounds of equity jurisdiction", and so dismissed the bills, "without prejudice to the right of the plaintiff hereafter to have this cause transferred to the law side of this court, as provided by Section 11, Art. 4, Ch. 56 of the Code of West Virginia, for procedure therein as a law action, upon amended pleadings, as in said statute provided, in the case and event of an affirmance of this decree of dismissal on appeal therefrom, or the election of the plaintiff not to appeal therefrom or her inability to obtain such appeal." It is argued that plaintiff's right to have the cause transferred to the law side of the court as provided by Code, 56-4-11, renders the decree non-appealable. The pertinent portion of that statute reads:

> "No case shall be dismissed simply because it was brought on the wrong side of the court, but whenever it shall appear that a plaintiff has proceeded at law when he should have proceeded in equity, or in equity when he should have proceded at law, the court shall direct a transfer to the proper forum, and shall order such change in, or amendment of, the pleadings as may be necessary to conform them to the proper practice; and, without such direction, any party to the suit shall have the right, at any stage of the cause, to amend his pleadings so as to obviate the objection that his suit or action was not brought on the right side of the court."

Our statute was copied from the Virginia statute (Va. Code, 1919, sec. 6084). The question considered herein was first decided in Virginia in *Hodges* v. *Thornton,* 138 Va. 112, 120

S. E. 865, 868 (1924), wherein the court, in determining whether a decree which transferred a cause to the law side of the court was appealable, stated: "We think that it was a final decree, in that it denied the whole of the relief prayed in the bill and in effect dismissed the bill and remanded the plaintiffs to another forum, namely, the law side of the court. But if it was not a final decree, it certainly adjudicated the principles involved, and hence was an appealable decree." In *Colvin* v. *Butler*, (Va.) 143 S. E. 333, 334, decided in 1928, a suit was transferred to the law side, where, upon proper pleadings, the action went to trial before a jury; but, after examination of the plaintiff, the court of its own motion transferred the case back to the chancery side, to which action the defendants objected on the ground that upon re-transfer of the litigation from the law side to the chancery docket, it "was met with a finding to the effect that equity had no jurisdiction, which finding was final and amounted to an adjudication of that proposition." The appellate court, discussing the quoted portion of the *Hodges-Thornton* case, stated (at page 334): "If this be construed to definitely state that the order first transferring the cause was technically speaking a final decree, then that statement was dictum, and not necessary in any decision of the matter then in judgment. All that the court had to decide was that the decree under review was an appealable decree, and it is in fact manifest that the court did not desire to commit itself definitely further." The court continued: "We should, of course, in dealing with a statute, follow its purpose whenever it is possible to do so, and it is likewise manifest that it would here be in the interest of justice to give to it a liberal, and not a technical, construction. This can readily be done by dealing with this entire record as part and parcel of one transaction. If we treat the decree as appealable and not final, then it may still be brought under review. Such error as was committed when the cause was transferred from equity to law was corrected when it was transferred back from law to equity. This we hold is reasonable. It does no violence to the language of the statute, and it does what should be done whenever it is possible to do it. It gives to the plaintiff one fair trial, something to which he is entitled

in good conscience and under the statute. If this be not true, then a statute designed as a buckler becomes a sword.''

The reason for the adoption of the Virginia statute as explained by Judge Martin P. Burks, one of the Code (1919) Revisors, was to ''give the advocates of code procedure full opportunity to develop the merits of the system, and if they proved more satisfactory than the present system the transition would be much easier than by a complete substitution of one for the other at the present time.'' 5 Va. Law Reg. (N. S.) 97, 120. The language of the statute itself mirrors the legislative intent to adhere to the prevailing distinction between courts of equity and courts of law. Hence, consideration of cases based on code practice is unnecessary.

In the cause at bar, there has been no transfer. The decree merely reserves to plaintiff her statutory procedural right upon the happening of any of the following events: (1) inability to obtain an appeal, (2) affirmance of the decree on appeal, or (3) election not to appeal. But, the dismissal of the bills stands determinate and conclusive. It adjudicates the principles of the cause in so far as jurisdiction is concerned. There is pronouncement of no equity. To compel the plaintiff to have her rights determined in a court of law before ascertaining whether the chancellor erred in denying equity jurisdiction not only would work hardship upon her, but would tend, in many instances, to occasion and to prolong useless litigation, and would defeat the manifest purpose of the statute. We are of opinion that the decree complained of adjudicates the principles of the cause within the meaning of the statute and is appealable. Therefore we must give consideration to the matters properly presented by the appeal.

Virginia Howard was the wife of David C. Howard. They were married in 1927, separated in 1928, and divorced by decree of the circuit court of Kanawha County, November 14, 1930. By the decree, the bonds of matrimony were dissolved at the instance of the plaintiff on the ground of the defendant's desertion, but the decree made no provision for alimony because, as recited therein, the parties had made a property settlement by written contract of August 1, 1930. On May 1, 1931, the parties entered into a new contract, cancelling the former, and prescribing terms of settlement.

The latter contract required David C. Howard to pay his divorced wife, the plaintiff, during her life, $350.00 per month if she did not remarry and $250.00 a month if she did remarry, payments to be made out of his estate if she survived him, such payments to be "a first charge and lien upon his estate after the payment of his indebtedness and the expenses of administering his estate." By the agreement, Howard covenanted to "carry insurance upon his life in a responsible life insurance company or companies in an amount which shall be fifty per cent (50%) in excess of his debts and liabilities, in order that upon his death his estate shall be free of any and all liens and obligations created by him during his lifetime." On the 8th of May, 1931, the parties, by counsel, appeared before the circuit court of Kanawha County and procured the entry in the divorce case of a decree ratifying and confirming in its several terms and provisions the last-named agreement. The court embraced in said decree a requirement that David Howard pay to the plaintiff $350.00 per month if she did not remarry and $250.00 per month if she did remarry, "as alimony during her life."

David C. Howard died August 29, 1931.

It appears from the allegations of the original and amended bills that at Howard's death there were due plaintiff $591.81 under the contract of August 1, 1930, and $400.00 under the contract of May, 1931, and that the September, 1931, payment had become due and was not paid; that Howard failed to comply with his covenant to carry insurance as provided in the agreement, for which the consideration in part was the surrender of her interest in such real estate as decedent then owned, as well as the transfer to decedent of shares of stock in corporations, owned by plaintiff and represented to be worth $100,000; that the indebtedness of the Howard estate, exclusive of plaintiff's claim, totals $139,000 and that, in addition thereto, decedent was secondarily liable by reason of endorsements in the amount of $50,000; that the amount of insurance on decedent's life at his death was $92,000, of which $5,000 is held as collateral security for indebtedness; that an inventory of the estate shows the assets to be appraised at $203,905.48; that, by reason of the insufficiency of the estate and the breach of the covenant to carry insurance, it is im-

possible for plaintiff to obtain in full the payment decreed her; that the income from the estate, after payments of debts and expenses, will be insufficient to discharge payments to plaintiff as they accrue, thus necessitating payment out of the corpus of the estate; that in addition to the lien, provided for in the agreements, she has also, by virtue of the agreements and the breach of the covenant to carry insurance, a "right to damages and compensation for the breach thereof," as a debt and charge upon said estate; and that in determining the amount of damages plaintiff invokes the provisions of Code, chapter 43, article 2.

The plaintiff prays that there be an ascertainment of the assets and liabilities of the Howard estate and that the liens and their priorities be determined; that the executors be required to make immediate payment of the past due installments of alimony under the decree of May 8, 1931; that she may be decreed expenses of suit and attorneys' fees; that she may have a gross sum in lieu of periodical payments of alimony; that, under the covenant of David C. Howard to carry insurance on his life as alleged in the bills, the same not now being specifically enforceable because of his death, she may have a decree for damages by way of compensatory relief; that a lien on said estate after the payment of debts and expenses and charges of administration be adjudicated in favor of the plaintiff, and that if she cannot have a decree for damages and compensation as aforesaid, that such of the estate as shall remain after payment of debts, expenses and charges be sold and the proceeds applied on the payments due to the plaintiff; and for general relief.

A decree for permanent alimony in monthly payments beginning from the date of the decree, is a personal decree against the husband, and ordinarily constitutes a lien on his land from the date of the entry of the decree, for all future payments thereunder. *Gain* v. *Gerling*, 109 W. Va. 241, 153 S. E. 504. But whether such effect can be given to the aforementioned decree of May 8, 1931, will have to be determined when proper parties are before the court. By its terms the decree is based on the provisions of the contract between the plaintiff and her divorced husband, Howard, dated May 1, 1931, and the latter provides that installments of alimony

"shall be a first charge and lien upon his estate after the payment of his indebtedness and the expenses of administering his estate." Did she by said contract unqualifiedly accept postponement of the time when her lien should be applicable? In determining that query, consideration must be given to the failure of Howard to comply with his express covenant to carry life insurance in an amount greater than his indebtedness by fifty per centum thereof, the plan being that his general indebtedness should be satisfied out of life insurance funds to the end that the corpus of his estate should be debt free and that upon his unincumbered estate she would rely for the payment of her monthly installments of alimony if she survived him. Was there failure of consideration for her agreement to postpone her position as to priority?

And, upon whatever basis her claim shall be placed, there must be determination of the question as to whether, under the circumstances, she is entitled to a gross sum in lieu of the periodical payments.

An action at law for money payable under contract, or for damages for breach of Howard's covenant to carry policies of insurance on his life as required by the contract of May 1, 1931, would not afford the plaintiff full, adequate and complete relief. She is not presenting a mere money demand based on contract, or for damages for breach of contract. She is primarily concerned with her status as a creditor, whether she has a lien as of the date of the decree of May 8, 1931, whether she must stand with common creditors, or whether she is subordinated to them. A court of law is not constituted to determine these questions. Other than as to common law possessory liens, questions pertaining to liens are primarily of equity cognizance. 37 Corpus Juris, 340; 17 Ruling Case Law, page 603, *et seq.* By relegating the plaintiff to the law side of the court, the questions pertaining to her lien status, if any she has, are foreclosed against her. Thus, we are unable to share the view of the trial chancellor that the bills are without equity and should be dismissed.

But these matters may not be determined without proper parties before the court. All creditors of Howard's estate are interested because the plaintiff is seeking to establish a status which would be detrimental to all over whom she

might be placed or who might be required to participate with her on a common basis. "Generally, all persons who are materially interested in the subject-matter involved in a suit, and who will be affected by the result of the proceedings, should be made parties thereto, and when the attention of the court is called to the absence of any of such interested persons, it should see that they are made parties before entering a decree affecting their interests." *Long* v. *Pritt*, 92 W. Va. 73, 114 S. E. 512. "Non-joinder of a necessary party defendant is so serious a defect that the objection may be raised by the court *ex mero motu* * * *, or under circumstances may be raised for the first time in the appellate court." *McDonald* v. *Bennett*, 108 W. Va. 665, 670, 152 S. E. 533, 535.

We cannot accede to the plaintiff's proposition that creditors of the estate need not be parties, on the theory that their interests are protected by the executors, they being parties defendant. One seeking to establish a simple claim against a decedent's estate may proceed at law against the personal representatives alone, for such purpose, but that is not the situation here.

The decree sustaining the demurrers to the original and amended bills and dismissing the same recites that the plaintiff declined to amend. That declination, however, was based on the court's finding that there was no equity in the bills. The absence of necessity parties apparently did not enter into the court's finding. The opportunity to amend did not pertain to the question of parties but to subject matter. It having now been determined on appeal that the bills are sufficient as to subject matter, there should be an opportunity to amend specifically as to parties.

Therefore, we reverse the decree of the trial chancellor wherein he sustained the demurrer to the bills bcause of want of equity and dismissed the same subject to the right of the plaintiff to transfer the cause to the law side of the court; and in lieu of the chancellor's decree we shall enter a decree here sustaining the demurrer to the bills merely because of non-joinder of necessary parties defendant, and remanding the cause to the trial court with leave to the plaintiff to amend.

*Reversed in part and remanded.*